NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DELUXE BUILDING SYSTEMS, INC., | |
| Plaintiff, | Civ. No. 06-2996 (GEB) |
| v. | MEMORANDUM OPINION |
| CONSTRUCTAMAX, INC. et al., | |
| Defendants. | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion for partial summary judgment filed by Whitlock Mills, LP ("Whitlock").[1] (Doc. No. 174.) Constructamax, Inc. ("Cmax") opposes Whitlock's motion. (Doc. No. 180.) The Court has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78. Having done so, the Court will grant Whitlock's motion for the reasons that follow.

**I. BACKGROUND**

Whitlock's present motion for partial summary judgment involves counterclaims for breach of a construction contract between Whitlock and Cmax. (Doc. No. 173.) Having considered the parties' submissions, the Court concludes that the parties address factual and legal issues not relevant to the resolution of the present motion. The Court will discuss only those matters that are relevant in this memorandum opinion.

---

[1] The Court will not label any party "plaintiff" or "defendant" because virtually all parties to this complex case have filed cross and/or counterclaims, and therefore the application of those labels creates confusion.

Whitlock is the owner of an affordable housing project known as Whitlock Mills (the "Project") located in Jersey City, New Jersey. (Whitlock 56.1 at ¶ 1: Cmax 56.1 Reply at ¶ 1; Doc. Nos. 174,182.) On April 23, 2004, Whitlock and Cmax entered into a construction contract (the "Contract"), and then a letter agreement on April 26, 2004 (the "Letter Agreement"). (*Id.* at ¶¶ 2, 3.) Pursuant to the Contract, Cmax was required to perform work ("Work") on the Project. (*Id.* at ¶ 4.) Article 2 of the Contract defines Work to include the furnishing of:

> all of the materials, supplies, tools, equipment, labor, management and supervision and [the performance of] all other acts and [the supplying of] all other things . . . necessary to produce the Project described in the Contract Documents, including Work expressly specified and such Work as may be reasonably inferred therefrom, including appropriate professional and non-professional services necessary to complete the Contractor's services as required under the Contract, saving and excepting only such items of Work as are specifically stated in the Contract Documents not to be the obligation of the Contractor.

(*Id.* at ¶ 5.) Article 3 of the Contract required Cmax to complete its Work on the Project, "to the satisfaction of the Owner, Architect, and the Agency no later than 730 Days [two calendar years] following the commencement date specified in the Notice to Proceed, as said completion may be adjusted in accordance with this Contract, time being of the essence." (*Id.* at ¶ 6.)

Slightly more than two-years after the Contract was signed, on April 26, 2006, representatives from Whitlock, Cmax, DeLuxe[2], and Project Architect John Saracco met to discuss water infiltration problems that plagued the incomplete Project. (*Id.* at 49.) At that

---

[2] The Court simply notes that DeLuxe, also a party to this case, is a subcontractor Cmax retained to construct pre-fabricated units for the Project. Given that the Court writes only for the parties, who are fully familiar with the facts and procedural posture of this complex case, the Court shall refrain from discussing issues that are collateral to the adjudication of the present motion.

meeting, Cmax and DeLuxe agreed to complete all exterior work on Buildings I-1 and I-2 (two of many planned Project buildings) and to use that effort as a paradigm for resolving the water infiltration issues in all buildings.  (*Id.* at ¶ 50.)  The next day, on April 27, 2006, Cmax submitted to Whitlock an executed Application and Certificate for Payment No. 26 ("Requisition 26") that requested $822.845.93 for Work performed during the period ending on April 27, 2006.  (*Id.* at ¶ 52.)  At a field meeting that same day, both Mr. Saracco and a representative of the New Jersey Housing and Mortgage Finance Agency (Whitlock's construction lender, hereinafter the "Agency"), signed Requisition 26.  (*Id.* at ¶ 53.)  Whitlock asserts that, because Cmax and DeLuxe had agreed at the April 26, 2006 meeting to work expeditiously to resolve the water infiltration and other disputes, Whitlock raised no objection on April 27th to the approval of Requisition 26.  (*Id.* at 54.)  Thereafter, on May 3, 2006, a Whitlock executive signed a check in the amount of $822,845.93 payable to Cmax.  (*Id.* at ¶ 62.)  That check was then forwarded with supporting documentation to Whit Gooch, the Agency's Director of Technical Services, who approved and mailed the Requisition 26 check to Cmax on May 12, 2006.  (*Id.* at ¶¶ 65-67.)

On May 9, 2006, while the payment of Requisition 26 was being processed, a water test was conducted at the Project site, as contemplated by the parties during the April 26, 2006 meeting.  (*Id.* at ¶ 68.)   The following day, Mr. Saracco reported the results of the test to Whitlock, in part as follows:

> It should be noted that the exterior shell of the buildings was not completed; particularly the thin brick installation, grouting of the thin brick, hvac louver placement location and caulking, window trim and caulking installation, gutters and leaders, portions of the cap flashing, gfrp decorative trim, and entrance stairs.

(*Id.* at ¶ 69.)  Further, Mr. Saracco observed that, "DeLuxe will not continue finishing the interior

3

of [Buildings I-1 and I-2] until the exterior shell is complete.  This is the proper course of action because the buildings are still vulnerable to water penetration until the entire shell is complete." (*Id.* at ¶ 70.)  Finally, Mr. Saracco noted that, "it is imperative that the exterior shells of all the I buildings be completed immediately. . . . I should note that it is extremely disappointing for [Whitlock] not to have any completed I building units at this time because of an incomplete exterior shell."  (*Id.* at ¶ 72.)  Whitlock unsuccessfully attempted to contact Cmax throughout the week of May 8-12, 2006, after Mr. Saracco's communications were received.  (*Id.* at ¶ 73.)

Despite Whitlock and Cmax's inability to communicate regarding Mr. Saracco's communications, on May 11, 2006, Cmax submitted a fourth revised construction delivery schedule to Whitlock with a proposed Project completion date of October 12, 2006.  (*Id* at ¶ 74.)  The May 11 revised schedule established for the first time that the vast majority of units would not be completed by the June 14, 2006 date contemplated in the Contract.  (*Id.* at ¶ 75.)  Whitlock informed Cmax that the proposed May 11, 2006 revised schedule was unacceptable. (*Id.* at ¶ 77.)  Thereafter, Whitlock sought the Agency's consent to withhold payment on Requisition 26.  (*Id.* at ¶ 79.)  On May 15, 2010, Whitlock received Whit Gooch's consent to stop payment on the $822,845.93 check to Cmax.  (*Id.* at ¶ 81.)  Mr. Gooch's consent – originally issued on the telephone – was confirmed in an email message he sent to Whitlock later on the morning of May 15, 2010.  (*Id.* at ¶ 87.)  Whitlock immediately sent a letter to Cmax and alerted Cmax that Whitlock had stopped payment on the Requisition 26 check with the concurrence of the Agency.  (*Id.* at ¶ 90.)  Ultimately, in June, 2006, after these events too place, Work on the Project ceased.  Whitlock asserts that Cmax "walked off the Project and abandoned performance of the Work" on June 16, 2006.  (*Id.* at ¶ 16.)  Cmax counters that it terminated the

Contract on June 16, 2006, because of Whitlock's non-payment of various requisitions. (*Id.*)

Based in part upon the foregoing facts, this case commenced on May 17, 2006, when DeLuxe filed a complaint against Cmax in New Jersey Superior Court, Hudson County, that alleged Cmax had breached the contract between those parties. (Doc. No. 1.) On June 30, 2006, Cmax removed the case, which was then assigned to the late Honorable Harold Ackerman, U.S.D.J. (*Id.*) Thereafter, on November 16, 2006, Cmax filed a third party complaint, and therein lodged claims against Whitlock for breach of contract. (Doc. No. 11.) On September 12, 2008, this case was reassigned to the undersigned. (Doc. No. 92.) Subsequently, on January 13, 2009, the Court bifurcated this case, and ordered that the liability issue on both Whitlock and Cmax's breach of contract claims shall be decided in the initial phase. (Doc. No. 126.) Accordingly, on February 19, 2010, Whitlock filed its present motion for partial summary judgment, in which it seeks summary judgment on the liability portion of both its own and Cmax's breach of contract claims. (Doc. No. 173.) Cmax filed opposition to Whitlock's present motion on March 15, 2010. (Doc. No. 178.)

## I.   DISCUSSION

### A.   Legal Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)

(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

    B.    **Application**

Applying the foregoing legal standard to the facts of this case with all reasonable inferences drawn in favor of Cmax, the Court concludes that no reasonable finder of fact could fail to decide that Cmax breached the Contract and is liable to Whitlock for damages.  The Contract contains the following relevant terms stated in pertinent part:

> <u>Section 7.1(b)</u>
>
> The intent of this provision is that, inasmuch as the prompt completion of the work is a matter of public importance, the Agency shall be the sole judge as to the fitness of the material or the compliance of the work with the provisions of the Contract, and that all work required shall be promptly and satisfactorily performed, reserving to the parties the right to have determined by the method hereinafter provided all questions relating to compensation, damages, or other payments.  The Contractor [Cmax] shall under no circumstances cause any delay of work during any dispute as to work or compensation, or because of any dissatisfaction with any decision of the Agency.
>
> <u>Article 27</u>
>
> Inasmuch as the Contractor [Cmax] agrees that it can be adequately compensated by money damages for any breach of the Contract which may be committed by the Owner [Whitlock], the Contractor expressly agrees that no default, act, or omission of the Owner, except non payment of the amount approved by the Agency, shall

>constitute a material breach of the Contract entitling it to cancel, or rescind the Contract or to suspend or abandon performance of the Work of the Contract.  The Contractor hereby waives any and all rights and remedies to which it might otherwise be or become entitled because of any wrongful act or omission of the Owner or Agency, saving only its right to money damages against the Owner to be determined as provided in the Contract.
>
>Article 24
>
>Inasmuch as the Work is in furtherance of an improvement, the prompt completion of which is a matter of public importance, . . . if the Work shall be abandoned by the Contractor . . . the Owner upon the express prior written consent of the Agency, after seven (7) Days prior written notice to the Contractor and the Surety, without prejudice to any other right or remedy of the Owner in the premises, may terminate the Contractor's right to proceed with the Work.

(Whitlock Mot. Br., Ex. 2; Doc. No. 174.)

Applying the basic facts of this case to the plain meaning of the Contract's language above, Cmax materially breached the Contract as a matter of law.  Here, Section 7.1(b) of the Contract states that, "[t]he Contractor [Cmax] shall under no circumstances cause any delay of work during any dispute as to work or compensation, or because of any dissatisfaction with any decision of the Agency."   Further, Article 27 states that, "the Contractor expressly agrees that no default, act, or omission of the Owner, except non payment of the amount approved by the Agency, shall constitute a material breach of the Contract entitling it to cancel, or rescind the Contract or to suspend or abandon performance of the Work of the Contract."  Despite this clear language, Cmax expressly pleads in its complaint against Whitlock that, "on or about May 18, 2006, upon written notice, Constructamax advised Whitlock Mills that the failure to make payment for Requisition No. 26 constituted a material breach of the contract and advised Whitlock Mills of Constructamax's 'intent to terminate' the Prime Contract based on such

7

nonpayment, should the owner fail to 'cure' its material breach." (Cmax Compl. at ¶ 31; Doc. No. 11.) Thus, Cmax expressly pleads that Whitlock's non-payment of Requisition 26 was a material breach that allowed Cmax to terminate the Contract. That position is erroneous as a matter of law. It is undisputed that the Agency authorized Whitlock to stop payment of the $822,845.93 payable to Cmax for Requisition 26. As a result, Whitlock's non-payment of Requisition 26 was not a material breach, and by the express terms of the Contract did not form a sufficient basis for Cmax to terminate the Contract as a matter of law. Instead, in the absence of a material breach, the express terms of the Contract clearly state that Cmax was not legally entitled, "to cancel, or rescind the Contract or to suspend or abandon performance of the Work of the Contract." Yet, Cmax did abandon performance of Work under the Contract on June 16, 2006. As a result of Cmax's abandonment, Article 24 of the Contract allowed Whitlock to, "terminate the Contractor's right to proceed with the Work."

     The Court concludes that there are simply no genuine issues of material fact present in this case that alter the result of the foregoing application of basic fact to the Contract's express language: that Cmax materially breached the Contract. Indeed, it appears Cmax's primary argument in opposition is that somehow Whitlock's non-payment of Requisition 26 was in "bad faith" and as a result, the express language of the Contract is overridden. The Court concludes that argument is entirely without merit, and runs contrary to the proffered evidence. On this point, Whitlock and Cmax essentially debate whether the Court should analyze Cmax's "bad faith" assertion under either an objective, or a subjective standard. Cmax, for its part, argues that the Court must apply an objective standard, and asserts that if that objective standard is applied genuine issues of material fact exist that preclude summary judgment on this issue. The Court

disagrees, and concludes that whether an objective or subjective analysis is applied, Cmax has failed to create any genuine issue of material fact that Whitlock's actions were taken in bad faith. There can be no question that, if a subjective standard is applied, Whitlock's dissatisfaction with Cmax' performance justified Whitlock's termination of the contract. If an objective standard is applied, Cmax has simply failed to identify evidence that creates a genuine issue of fact that Whitlock's actions were in bad faith. To the contrary, the undisputed facts of this case indicate that the Project was chronically behind schedule. In fact, Cmax itself admits that the Project "could not have been completed by the completion date." (Whitlock 56.1 at ¶ 109: Cmax 56.1 Reply at ¶ 109; Doc. Nos. 174,182.) In sum, even if an objective standard is applied, the Court concludes that no reasonable finder of fact could decide that Whitlock's non-payment of Requisition 26 and subsequent termination of the Contract was in bad faith.

In sum, an application of the undisputed facts of this case to the plain language of the Contract yields the Court's conclusion that Cmax materially breached the Contract and is liable to Whitlock for the damages resulting therefrom. As such, the Court will grant Whitlock's motion for partial summary judgment.

### III. CONCLUSION

For the foregoing reasons, the Court will GRANT Whitlock's motion for partial summary judgment. (Doc. No. 174.) An appropriate form of order accompanies this memorandum opinion.

Dated: May 5, 2010

                                                 /s/ Garrett E. Brown, Jr.
                                                GARRETT E. BROWN, JR., U.S.D.J.