NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DELUXE BUILDING SYSTEMS, INC., | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Plaintiff, | Civ. No. 06-2996 (GEB) |
| v. | MEMORANDUM OPINION |
| CONSTRUCTAMAX, INC. ET AL., |  |
| Defendants. |  |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion for partial summary judgment filed by Whitlock Mills, LP ("Whitlock").[1]  (Doc. No. 241)  Arch Insurance Co. and Arch Reinsurance Co. (collectively, "Arch") oppose Whitlock's present motion.  (Doc. No. 246)  The Court has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78.  Having done so, the Court will grant Whitlock's motion for the reasons that follow.

**I.    BACKGROUND**

The Court has issued numerous memorandum opinions in this nearly five-year-old case since it was reassigned to the undersigned on September 15, 2008.  The parties are fully familiar with the facts and procedural history.  Additionally, the Court concludes that the parties' submissions address factual and legal issues not relevant to the resolution of the present motion.

---

[1] The Court will not label any party "plaintiff" or "defendant" because virtually all parties to this complex case have filed cross and/or counterclaims, and therefore the application of those labels creates confusion.

As such, for the sake of economy, the Court will discuss only those matters that are relevant and necessary to the Court's decision.

Whitlock is the owner of an affordable housing project known as Whitlock Mills (the "Project") located in Jersey City, New Jersey. (Whitlock 56.1 at ¶ 1: Arch 56.1 Reply at ¶ 1; Doc. Nos. 241, 246) On April 23, 2004, Whitlock and Constructamax ("Cmax"), as general contractor, entered into a construction contract (the "Contract"), and then a letter agreement on April 26, 2004 (collectively, the "Letter Agreement"). (*Id.* at ¶ 2.) Pursuant to the Contract, Cmax was required to perform work ("Work") on the Project. (*Id.* at ¶¶ 3, 4.) Article 2 of the Contract defines Work to include the furnishing of:

> all of the materials, supplies, tools, equipment, labor, management and supervision and [the performance of] all other acts and [the supplying of] all other things . . . necessary to produce the Project described in the Contract Documents, including Work expressly specified and such Work as may be reasonably inferred therefrom, including appropriate professional and non-professional services necessary to complete the Contractor's services as required under the Contract, saving and excepting only such items of Work as are specifically stated in the Contract Documents not to be the obligation of the Contractor.

(*Id.* at ¶ 4.) Article 3 of the Contract required Cmax to complete its Work on the Project, "to the satisfaction of the Owner, Architect, and the Agency no later than 730 Days [two calendar years] following the commencement date specified in the Notice to Proceed, as said completion may be adjusted in accordance with this Contract, time being of the essence." (*Id.* at ¶ 5.)

On May 26, 2004, pursuant to Article 29 of the Contract, Arch, as surety, issued on behalf of Cmax, as principal, to Whitlock and the Agency, as obligees, Payment and Performance Bond (the "Bond") No. SU1001182, in the penal sum of $34,581,371. (*Id.* at ¶ 18.) Several years

later, on June 16, 2006, Cmax abandoned its Work on the Project.  (*Id.* at ¶ 19)   In response, Whitlock, as obligee under the Bond, demanded that Arch, as obligor, satisfy its obligations under the Bond.  (*Id.* at ¶ 23.)  Ultimately, on February 13, 2007, Whitlock and Arch ratified the Surety Takeover Agreement ("the Takeover Agreement"), which framed Arch's future performance under the Bond through completion of the Project.  (*Id.* at ¶ 26.)  The Takeover Agreement contained the following relevant clauses:

> 7. <u>Completion.</u>  The Work to be performed under the Contract shall be completed pursuant to the terms of the Contract, and, as applicable, to the reasonable satisfaction of the Owner [Whitlock], architect, and Agency not later than eight (8) months after the date of this Takeover Agreement. It is expressly understood and agreed by Surety [Arch] and Owner that eight (8) months is a sufficient and reasonable time within which to correct the deficiencies and complete the remaining Work to be performed under the Contract. . . . If Surety fails to correct the deficiencies and substantially complete the Work within eight (8) months plus any authorized extension thereof, then Surety shall be in default under this Takeover Agreement . . . .
>
> 8. <u>Withholding of Payments: Liquidated Damages.</u>  For cash flow purposes only . . . Owner [Whitlock] may withhold and offset form the payment of the Contract Balance to be made . . . the sum of $7,775.00 per day in liquidated damages . . . .
>
> 13. <u>Applicability of Contract.</u>  Except as modified by this Takeover Agreement, Owner [Whitlock] and Agency shall have the rights, obligations, and responsibilities under the Contract with respect to Surety [Arch] as Owner and Agency had thereunder with respect to Cmax, and Surety shall have the rights, obligations, and responsibilities under the Contract with respect to Owner and Agency as Cmax had thereunder with respect to Owner and Agency.

(Whitlock Mot. Br., Ex. 11; Doc. No. 241)  Thus, unless modified by the Takeover Agreement,

the terms of the Contract continued to control. Relevant here, the Contract contained the following clauses that were not modified by the Takeover Agreement:

> Section 7.1(b)
>
> The intent of this provision is that, inasmuch as the prompt completion of the work is a matter of public importance, the Agency shall be the sole judge as to the fitness of the material or the compliance of the work with the provisions of the Contract, and that all work required shall be promptly and satisfactorily performed, reserving to the parties the right to have determined by the method hereinafter provided all questions relating to compensation, damages, or other payments. The Contractor [Cmax] shall under no circumstances cause any delay of work during any dispute as to work or compensation, or because of any dissatisfaction with any decision of the Agency.
>
> Article 27
>
> Inasmuch as the Contractor [Cmax] agrees that it can be adequately compensated by money damages for any breach of the Contract which may be committed by the Owner [Whitlock], the Contractor expressly agrees that no default, act, or omission of the Owner, except non payment of the amount approved by the Agency, shall constitute a material breach of the Contract entitling it to cancel, or rescind the Contract or to suspend or abandon performance of the Work of the Contract. The Contractor hereby waives any and all rights and remedies to which it might otherwise be or become entitled because of any wrongful act or omission of the Owner or Agency, saving only its right to money damages against the Owner to be determined as provided in the Contract.
>
> Article 24
>
> Inasmuch as the Work is in furtherance of an improvement, the prompt completion of which is a matter of public importance, . . . if the Work shall be abandoned by the Contractor . . . the Owner upon the express prior written consent of the Agency, after seven (7) Days prior written notice to the Contractor and the Surety, without prejudice to any other right or remedy of the Owner in the premises, may terminate the Contractor's right to proceed with the Work.

(Whitlock Mot. Br., Ex. 2; Doc. No. 241)

After the Takeover Agreement took effect, Arch, with Cmax as contractor, continued Work on the Project.  It is undisputed, however, that by October 12, 2007, the date specified for completion of the Project in the Takeover Agreement, Arch had not completed Work on the Project, and further, that Arch had not been granted any extension of that completion date.  (*Id.* at ¶¶ 32, 33.)  Indeed, by December 11, 2009, 34 months after the date of the Takeover Agreement, Arch had still not completed Work on the Project.  (*Id.* at ¶ 40.)   On that date, Arch purported to terminate the Takeover Agreement and informed Whitlock of its intention to cease Work on December 30, 2009.  (*Id.* at ¶ 41.)  Thereafter, with the consent of the Agency, Whitlock terminated the Contract and Arch's right to proceed with the Work on October 19, 2010.  (*Id.* at ¶ 48.)

Though the undisputed facts just described extend to October, 2010, the procedural history of this action began nearly five years ago, when the initial complaint in this case was removed to federal court.  Thereafter, as relevant here, on May 6, 2010, the Court granted Whitlock's motion for summary judgment regarding Cmax's liability for breach of the Contract. (Doc. No. 203)  Subsequently, on November 5, 2010, Whitlock filed its present motion that seeks partial summary judgement on: (1) Whitlock's claims against Arch for breach of the Bond and the Takeover Agreement (Counts V-VIII of Whitlock's operative pleading; Doc. No. 213); (2) Arch's counterclaims against Whitlock for breach of the Takeover Agreement (Counts I and IV of Arch's operative pleading; Doc. No. 218); and (3) Arch's affirmative defense of

5

overpayment.[2] In support of its present motion, Whitlock argues that an application of the undisputed facts to the relevant sections of the controlling contracts yeilds the conclusion that Arch materially breached the Bond and the Takeover Agreement as a matter of law. (Doc. No. 241) Arch opposes Whitlock's motion. (Doc. No. 246)

## II.  DISCUSSION

### A.  Legal Standard

A party seeking summary judgment must "show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). The moving party carries the burden of showing "the absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In countering a motion for summary judgment, the nonmoving party must support its opposition by "citing to particular parts of materials in the record" or "show that the materials cited to not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[nonmoving party] must do

---

[2] The Court has bifurcated this case. (Doc. No. 126) Pursuant to that decision, the issue of the various parties' liability has been and continues to be addressed by the Court. At the appropriate time in the future, the Court will address the issue of damages proximately caused by any parties' liability, as well as other issues such as attorney's fees. In light of this procedural posture, the Court in its discretion will construe Whitlock's present motion for partial summary judgment as limited to Whitlock and Arch's respective liability under the specified causes of action.

more than simply show that there is some metaphysical doubt as to the material facts"). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party. *Id*. at 587; *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

    **B. Application**

In their operative pleadings, both Whitlock and Arch claim that the other party breached the Takeover Agreement, and therefore the Bond, and are liable for any damages proximately caused by that breach. In the present motion, Whitlock argues that summary judgment on those claims should be granted in its favor because an application of the relevant undisputed facts to the relevant sections of the controlling agreements yields the conclusion that Arch materially breached the Bond and the Takeover Agreement as a matter of law. (Doc. No. 241) The Court agrees.

On May 6, 2010, the Court granted Whitlock's motion for summary judgment as to Cmax's liability to Whitlock for damages caused by Cmax's material breach of the Contract. In deciding that motion, the Court applied the relevant undisputed facts to the relevant portions of the Contract and concluded that Cmax had materially breached the Contract as a matter of law. Similarly, having reviewed the parties' submissions in this matter, the Court concludes that an application of the relevant undisputed facts to the Takeover Agreement yields a parallel result; that Arch materially breached the Takeover Agreement as a matter of law.

As noted above, it is undisputed that: (1) the Takeover Agreement established that October 13, 2007, was the completion date for the Project; (2) Arch was never granted an extension of that completion date; (3) Work on the project was not complete on October 13,

2007; and (4) 34 months later, on December 11, 2009, when Arch informed Whitlock of its intention to terminate the Takeover Agreement, the Project was still not complete.  Based upon these basic undisputed facts, the Court concludes that Arch materially breached the Takeover Agreement as a matter of law by failing to complete Work on the Project within several years of the contractually mandated completion date.  This determination is girded by the clear language of Article 24 of the Contract which states, in sum, that Whitlock, and not Cmax or Arch, has the right to terminate the Contract in the event of material breach.  Simply put, no argument or evidence raised by Arch in opposition to Whitlock's motion creates a genuine material issue of fact as to whether Arch materially breached the Takeover Agreement and is liable to Whitlock for the damages proximately caused by that breach.   In light of the Court's foregoing conclusion, no further discovery on this issue is needed, and as such, Arch's argument pursuant to Rule 56(d) is unavailing.

      Finally, the Court addresses Whitlock's argument that Arch's overpayment affirmative defense fails as a matter of law.  Arch apparently argues that Whitlock was somehow negligent when it paid Cmax in accordance with the clear terms of the Contract for Work that was ultimately discovered to be defective.  Logically, to give effect to that argument, Arch essentially asserts that under New Jersey law, a bond obligee's mere negligence in the release of collateral extinguishes the surety's responsibility for the value of the collateral released.  Even assuming *arguendo* that New Jersey law accords with Arch's position, the Court concludes that no reasonable trier of fact could decide that Whitlock's payments to Cmax were negligent.  In this case, the Contract clearly established Whitlock's duty regarding payment of invoices; namely, following certification of an invoice by Cmax and approval of that invoice by the Project

architect and the Agency, Whitlock paid the invoice to Cmax. Arch has presented no evidence that suggests this protocol, which involves certification by at least three separate entities before payment, was not uniformly followed by Whitlock before any payment was rendered to Cmax. As a result, the Court concludes that Arch's argument that Whitlock was somehow negligent in following the foregoing protocols fails as a matter of law.

### III.   CONCLUSION

For the foregoing reasons, having construed Whitlock's present motion as seeking partial summary judgment regarding Arch's liability for material breach of the Bond and the Takeover Agreement, the Court will GRANT Whitlocks' present motion for partial summary judgement regarding liability for: (1) Whitlock's claims against Arch for breach of the Bond and the Takeover Agreement (Counts V-VIII of Whitlock's operative pleading; Doc. No. 213); (2) Arch's counterclaims against Whitlock for breach of the Takeover Agreement (Counts I and IV of Arch's operative pleading; Doc. No. 218); and (3) Arch's affirmative defense of overpayment. (Doc. No. 241)  An appropriate form of order accompanies this memorandum opinion.

Dated: February 8, 2011

                                                  /s/ Garrett E. Brown, Jr.
                                        GARRETT E. BROWN, JR., U.S.D.J.