NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DELUXE BUILDING SYSTEMS, INC.,**<br>**Plaintiff,**<br>**v.**<br>**CONSTRUCTAMAX, INC., et al.,**<br>**Defendants.** | **Civil Action No.: 06-2996 (ES)**<br>**OPINION** |

**SALAS, District Judge**

## I. Introduction

Before the Court is a motion for summary judgment filed by Constructmax, Inc. ("Cmax") pursuant to Federal Rule of Civil Procedure 56(c). (*See* Docket Entry No. 291). Cmax seeks an order dismissing Count Four—Willful Overstatement of Construction Lien—of Whitlock Mills, L.P.'s ("Whitlock") Fourth-Party Complaint. The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Cmax's motion is denied.

## II. Background[1]

The Court does not provide a detailed recitation of the facts at issue as the parties are thoroughly familiar with the facts and procedural history of this nearly six-year-old case. To that

[1] To minimize the potential for confusion, the Court refrains from labeling either party as "plaintiff" or "defendant" because virtually all parties to this complex case have filed cross and/or counterclaims.

end, the Court only recounts the essential facts necessary to determine the legal issues presented by Cmax's motion.

On April 23, 2004, Whitlock and Cmax entered into a construction contract, which was later amended on April 26, 2004 by way of a letter agreement. (Docket Entry No. 213, Whitlock Mills L.P.'s First Amended, Restated and Consolidated Answer, Counterclaims, and Fourth-Party Complaint ("Whitlock Compl.") ¶¶ 7, 8). "Under the terms of the contract, Cmax was required to construct 330 units of mixed-income rental housing on a[] historic mill property." (*Id.* ¶ 9). Cmax understood in taking on this project that "time [was] of the essence," and that all of the work was to be completed by June 14, 2006. (*Id.* ¶ 11).

On June 13, 2006, Whitlock notified Cmax that it was in default based upon its failure to properly and promptly execute the work and follow the terms of the contract. (*Id.* ¶ 61). Apparently, "[b]y June 14, 2006, the deadline in the contract for completion of all work, Cmax had failed to complete a single building . . . ." (*Id.* ¶ 62).

On June 30, 2006, Whitlock terminated Cmax's right to proceed with the work of the contract, and began negotiating a possible takeover of the work with Arch. (*Id.* ¶ 71). Whitlock and Arch exchanged drafts of the takeover agreement, and "[n]egotiations concerning a possible takeover of the work by [Arch] continued for many months." (*Id.* ¶ 77). According to Whitlock, one provision that remained constant throughout its negotiations with Arch was that Whitlock "would not agree to a takeover agreement that did not require Arch to keep the project lien free," which Arch accepted. (*Id.* ¶¶ 77a, 82).

Nevertheless, "on September 14, 2006, just as Whitlock and Arch were nearing completion of their negotiations of [the] takeover agreement, Cmax intentionally filed an inflated and unlawful construction lien." (*Id.* ¶ 82). According to Whitlock, New Jersey's Construction

Lien Law, N.J.S.A. 2A:44A-1 *et seq.*, allows a contractor to "only lien for work that has been performed, and the claimed amount cannot exceed the unpaid contract balance." (*Id.* ¶ 83). Whitlock alleges that Cmax's own records demonstrate that at the time it filed its Lien Claim the amount of unpaid work it had performed barely exceeded one million dollars. (*Id.* ¶ 84). "As indicated in the final three (and only unpaid) applications for payment submitted by Cmax, . . . the total amount invoiced by Cmax for work performed on the job but not paid [was] $1,156,007." (*Ibid.*). "Accordingly, $1,156,007 was the maximum amount that could properly be liened by Cmax." (*Ibid.*). "Yet, Cmax sought a lien in a much higher amount. Indeed, the amount in the Lien Claim even exceeded the remaining balance on the contract (*i.e.*, $4,682,318.00) by more than $2 million, which is an express violation of the Act."[2] (*Id.* ¶ 85).

Whitlock contends that Cmax maliciously filed its overstated Lien Claim "to obtain improper leverage over Whitlock during the ongoing negotiations relating to Arch's possible take over of Cmax's work." (*Id.* ¶ 87). "Specifically, Cmax filed its claim in an amount that it knew would be difficult to bond off, with the intent to interfere with the takeover agreement negotiations between Whitlock and Arch . . . ." (*Ibid.*). Whitlock avers that "Cmax's willful overstatement of [its] Lien Claim caused substantial damage to Whitlock, including, among other things, loss of the benefit of Low Income Housing tax Credits and a takeover agreement to which Cmax, which previously failed to perform and materially breached the contract, is the completion contractor." (*Id.* ¶ 91).

In light of the preceding facts, Whitlock filed a Complaint against Cmax seeking relief for Cmax's alleged willful overstatement of its construction lien. (*See* Docket Entry No. 213). On June 10, 2011, Cmax filed a motion for summary judgment pursuant to Federal Rule of Civil

[2] Whitlock also alleges that Cmax's Lien claim included unapproved pending change orders and fabricated materials not yet installed, which, according to Whitlock, is not lienable under the Act. (*See id.* ¶¶ 85, 86).

Procedure 56(c). Cmax contends that summary judgment should be entered for two reasons. First, Cmax argues that "the damages an owner, contractor, subcontractor, or any other party subject to [N.J.S.A. § 2A:44A-15(a)] might incur as a result of the lienor's willful overstatement of a lien claim. . . . [is limited to] court costs [] and reasonable legal expenses." (Cmax Opp. Br. at 5). Second, Cmax asserts that "Whitlock has failed to establish damages under N.J. [sic] § 2A:44A-15(a)." (*Id.* at 7).

## III. Legal Standard

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010) (quoting *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (*en banc*) (citing Fed. R. Civ. P. 56(c)). "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Props.*, No. 11-2672, 2012 U.S. App. LEXIS 3580, at *5 (3d Cir. Feb. 23, 2012) (internal citation omitted). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur*, 601 F.3d at 216. "In determining whether summary judgment is warranted '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *DeShields*, 2012 U.S. App. LEXIS 3580, at *5 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## IV. Analysis

### A. N.J.S.A. § 2A:44A-15(a)

As a preliminary matter, the Court must determine whether N.J.S.A. § 2A:44A-15(a) allows for the recovery of damages in addition to attorneys' fees and court costs.

In grappling with this issue, some basic principles come into play. "When interpreting a statute, [the court's] main objective is to further the Legislature's intent." *In re Young*, 202 N.J. 50, 63 (2010) (citing cases). "To discern the Legislature's intent, courts first turn to the plain language of the statute in question." *Ibid.* (internal citations omitted); *United States v. Am. Trucking Assoc.*, 310 U.S. 534, 543 (1940) ("There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes."). "In reading statutory language, courts will give words their ordinary meaning absent any direction from the Legislature to the contrary." *Ibid.* (internal citation omitted). Furthermore, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, . . . no clause, sentence or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal citation and quotation marks omitted); *see also Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) ("[A court] must give effect to every word of a statute wherever possible."). "'If the [statute's] plain language leads to a clear and unambiguous result, then [the] interpretive process is over.'" *In re Young*, 202 N.J. at 63 (quoting *Richardson v. Bd. of Trs. Police & Firemen's Ret. Sys.*, 192 N.J. 189, 195 (2007)); *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) ("Where the statutory language is clear and unambiguous, further inquiry is not required.").

With these principles in mind, the Court turns its attention to the language of the statute. N.J.S.A. § 2A:44A-15(a) provides, in relevant part:

> If a lien claim is without basis [or] the amount of the lien claim is willfully overstated, . . . the claimant shall forfeit all claimed lien rights . . . . The claimant shall also be liable for all court costs, and reasonable legal expenses, including, but not limited to, attorneys'

> fees incurred by the owner, community association, contractor or subcontractor . . . in defending or causing the discharge of the lien claim. The court shall, in addition, enter judgment against the claimant for damages to any of the parties adversely affected by the lien claim.

N.J.S.A. § 2A:44A-15(a).

Cmax argues that N.J.S.A. § 2A:44A-15(a) does not allow for damages other than court costs and reasonable legal expenses. (Cmax Moving Br. at 5; Cmax Reply Br. at 3). By contrast, Whitlock contends that "N.J. Stat. § 2A:44A-15(a) provides for an award of damages 'in addition' to court costs and reasonable legal expenses." (Whitlock Opp. Br. at 2).

The Court finds that Whitlock has the better argument. Under the statute's plain and unambiguous language, a party subjected to the filing of an unlawful lien claim "shall" be remedied in two ways. First, the party shall be compensated for all court costs and reasonable legal expenses it acquired while defending or discharging the lien claim. N.J.S.A. § 2A:44A-15(a). Second, the statute unequivocally provides that "the court shall, *in addition*, enter judgment against the claimant *for damages* to [compensate] *any of the parties adversely affected* by the lien claim." *Ibid.* (emphasis added). Thus, pursuant to the ordinary meaning of the phrase "in addition," in conjunction with the legal principle that a statute be construed such that "no clause . . . or word be superfluous, void, or insignificant," *TRW Inc.*, 534 U.S. at 31, it is without question that § 2A:44A-15(a) provides for damages "as well as" court costs and reasonable legal expenses. *See Richard A. Pulaski Constr. Co., Inc. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 471 (2008) ("[Under N.J.S.A. 2A:44A-15(a)], if [a] construction lien is improperly filed, the claimant shall forfeit all claimed lien rights and providing that, in that instance, "[t]he court shall, *in addition* [*to awarding all expenses incurred in defending or discharging the lien*], *enter judgment against the claimant for damages* to any of the parties adversely affected by the lien

claim.") (alteration in original) (emphasis added). In contrast to Cmax's request, this Court "give[s] effect to every word of the statute," *Leocal*, 543 U.S. at 12, and because "the plain language of the statute leads to a clear and unambiguous result, the interpretive process is over." *In re Young*, 202 N.J. at 63.

**B. Damages**

The Court next determines whether the pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate that a genuine issue of material fact exists. Cmax argues that "Whitlock has failed to establish damages under N.J. § 2A:44A015(a). . . . [and, as a result,] Count IV should be dismissed with prejudice." (Cmax Moving Br. at 7). Cmax's argument lacks merit.

The Court finds that Whitlock has set forth specific facts—in connection with two distinct damages—demonstrating that genuine issues of material fact exist. First, Whitlock avers that "Cmax's willful overstatement of the Lien Claim caused substantial damage to Whitlock [because Whitlock] los[t] . . . the benefit of Low Income Housing Tax Credits." (Whitlock Compl. ¶ 91). This factual allegation is supported by the deposition testimony of Wallace L. Scruggs ("Scruggs")—Whitlock's 30(b)(6) witness on damages. (*See* Docket Entry No. 303-3, Scruggs Dep., May 25, 2011). Based upon the testimony elicited during Scruggs's deposition, Whitlock financed the construction project through investors, who, in turn, were to receive tax credits for their investments. (Scruggs Dep. 139:11-21). The tax credits were to "start flowing in 2006," *i.e.*, when the project was scheduled to be completed. (*Id.* at 139:11-12). Scruggs testified that "for each day and each month . . . we didn't deliver credits [to the investors based up]on our original completion schedule [*i.e.*, June 14, 2006], we[] incurred penalties with our investor," which Scruggs estimated to be "approximately $90,000 a month." (*Id.* at 139:12-21).

Thus, according to Scruggs, "the filing of the lien derailed or substantially delayed getting the takeover agreement done, . . . [which] definitely had an impact on the tax credits, because we couldn't get credits." (*Id.* at 139:22-25). As a direct result of Cmax's Lien Claim, "[Whitlock] owe[s] penalties to [its] investor[s]." (*Id.* at 140:5).

Finally, Whitlock alleges that "Cmax's willful overstatement of [its] Lien Claim caused substantial damage to Whitlock . . . [because it caused Whitlock to enter into] a takeover agreement . . . to which . . . Cmax is the completion contractor." (Whitlock Compl. ¶ 91). Scruggs asserted that "Whitlock and Arch . . . had made significant progress in takeover agreement negotiations to use another completion contractor before Cmax filed its overstated lien." (Docket Entry No. 303-2, Scruggs Decl., June 20, 2011, ¶ 6). This progress was stymied when Cmax filed its overstated Lien Claim because, at that time, Whitlock "didn't have the liquidity or the capability or the creditworthiness to get [the Lien Claim] bonded off." (Scruggs Dep. 138:22-25). However, "[h]ad Cmax filed its Lien Claim in an appropriate and proper amount, Whitlock would have been in a position to bond this lien off and continue to refuse to permit Cmax to return to the project as Arch's completion contractor." (Whitlock Compl. ¶ 88). Thus, "[b]ut for Cmax's overstated lien, Whitlock would not have agreed to allow Cmax to return as the completion contractor." (Scruggs Decl. ¶ 4). Nevertheless, "[o]nce Whitlock determined that Cmax's lien could not be bonded off, . . . the only means available . . . to compel Cmax to lift its lien was to accede to its demand to be taken on as the completion contractor." (*Id.* ¶ 3). According to Scruggs, that decision, in conjunction with "Cmax's egregiously poor performance[, has] caused years of additional delays and costs." (*Id.* ¶ 5).

The Court is satisfied, based upon its review of the pleadings, depositions, affidavits, and declarations, that Whitlock has set forth specific facts establishing the existence of genuine

issues of material fact such that a reasonable factfinder could rule in its favor. Accordingly, Cmax is not entitled to summary judgment.

## V. Conclusion

For the foregoing reasons, Cmax's motion for summary judgment relating to Count Four of Whitlock's Fourth-Party Complaint is denied. An accompanying Order shall follow.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**