NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DELUXE BUILDING SYSTEMS, INC., | : |
| | :    **Civil Action No.: 06-2996 (ES)** |
| Plaintiff, | : |
| | :    **OPINION** |
| v. | : |
| | : |
| CONSTRUCTAMAX, INC., et al., | : |
| | : |
| Defendants. | : |
| | : |

**SALAS, District Judge**

### I.    Introduction

Constructmax, Inc. ("Cmax") seeks dismissal of Count Three of Whitlock Mills, L.P.'s ("Whitlock") Fourth-Party Complaint by way of a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (*See* Docket Entry No. 290). The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth below, Cmax's motion is denied.

### II.    Background[1]

Before being reassigned to the Undersigned on June 29, 2011, the prior District Court Judges—Judge Ackerman and Chief Judge Brown—issued numerous memorandum opinions in this matter. For that reason, and because the parties are thoroughly familiar with the facts and

---

[1] To minimize the potential for confusion, the Court refrains from labeling either party as "plaintiff" or "defendant" because virtually all parties to this complex case have filed cross and/or counterclaims.

procedural history of the present case, the Court only recounts the essential facts necessary to determine the legal issues presented by Cmax's motion.

On April 23, 2004, Whitlock and Cmax entered into a construction contract, which was later amended on April 26, 2004 by way of a letter agreement. (Docket Entry No. 213, Whitlock Mills L.P.'s First Amended, Restated and Consolidated Answer, Counterclaims, and Fourth-Party Complaint ("Whitlock Compl.") ¶¶ 7, 8). "Under the terms of the contract, Cmax was required to construct 330 units of mixed-income rental housing on a[] historic mill property." (*Id.* ¶ 9). Cmax understood in taking on this project that "time [was] of the essence," and that all of the work was to be completed by June 14, 2006. (*Id.* ¶ 11).

Before commencing with any work, however, Cmax was required to "obtain from a surety a payment and performance bond with a penal sum equal to the full amount of the construction cost." (*Id.* ¶ 14). Cmax selected Arch Insurance Company ("Arch") to serve as the surety on the bond, and on May 26, 2004, Arch issued—on behalf of Cmax—a bond in the penal sum of $34,581,371.00. (*Id.* ¶ 19). As such, construction was allowed to proceed.

As construction began, "Cmax . . . immediately fell behind schedule." (*Id.* ¶ 26). In addition, performance issues surfaced "as Cmax repeatedly failed to proceed in accordance with the contract, . . . and . . . [a]s the work progressed, Cmax continued to miss every deadline . . . [including] its own proposed alternative deadlines." (*Id.* ¶ 35). Nevertheless, Cmax assured Whitlock that it would complete the work by the June 14, 2006 deadline. (*Id.* ¶ 38). Based upon Cmax's assurances, as well as extensive negotiation, Whitlock did not default Cmax. (*Id.* ¶ 38). Instead, Whitlock accepted a revised schedule of completion dates. (*Ibid.*). Once again, however, Cmax failed to meet these deadlines.

On June 13, 2006, Whitlock notified Cmax that it was in default based upon its failure to properly and promptly execute the work and follow the terms of the contract. (*Id.* ¶ 61). Apparently, "[b]y June 14, 2006, . . . Cmax had failed to complete a single building." (*Id.* ¶ 62).

On June 19, 2006, Whitlock notified Arch that Cmax abandoned its work under the contract, and demanded that Arch immediately perform its payment and performance obligations under the bond. (*Id.* ¶ 66). Then, on June 30, 2006, Whitlock terminated Cmax's right to proceed with the work of the contract, and began negotiating a possible takeover of the work with Arch. (*Id.* ¶ 71). Whitlock and Arch exchanged drafts of the takeover agreement, and "[n]egotiations concerning a possible takeover of the work by [Arch] continued for many months." (*Id.* ¶ 77). According to Whitlock, one provision that remained constant throughout its negotiations with Arch was that Whitlock "would not agree to a takeover agreement that did not require Arch to keep the project lien free," which Arch accepted. (*Id.* ¶¶ 77a, 82).

Nevertheless, "on September 14, 2006, just as Whitlock and Arch were nearing completion of their negotiations of [the] takeover agreement, Cmax intentionally filed an inflated and unlawful construction lien." (*Ibid.*). Whitlock contends that Cmax maliciously filed its overstated Lien Claim "to obtain improper leverage over Whitlock during the ongoing negotiations relating to Arch's possible take over of Cmax's work." (*Id.* ¶ 87). "Specifically, Cmax filed its claim in an amount that it knew would be difficult to bond off, with the intent to interfere with the takeover agreement negotiations between Whitlock and Arch . . . ." (*Ibid.*).

In light of the preceding facts, Whitlock filed a Complaint against Cmax seeking relief for, among other things, Cmax's alleged tortious interference with Whitlock's prospective economic advantage. On June 10, 2011, Cmax filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Cmax's argument for dismissal of Count

Three of Whitlock's Complaint is twofold.  First, Cmax contends that Whitlock has failed to properly plead a claim for tortious interference with a prospective economic advantage.  (Cmax Moving Br. at 6).  Second, Cmax asserts that it cannot be held liable for this cause of action because it was a party to "the economic relationship at issue since it served as the principal on the bond related to the underlying contract."  (*Ibid.*).

## III.   Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  As explained by the Third Circuit, "[g]ranting a Rule 12(c) motion results in a determination on the merits at an early stage in the litigation, and thus this court requires 'the movant to clearly establish that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  *Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc.*, 931 F.2d 1002, 1005 (3d Cir. 1991), *cert. denied*, 502 U.S. 909 (1991) (quoting *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290-91 (3d Cir. 1988)).  Under Rule 12(c), a court must view the facts in the pleadings and any inferences drawn therefrom in the light most favorable to the nonmoving party, and the motion should not be granted "unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment as a matter of law."  *Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008) (internal citation omitted).

"The standards governing Rule 12(c) motions are the same ones that govern motions to dismiss under Rule 12(b)(6)."  *Allah v. Hayman*, 442 F. App'x 632, 635 (3d Cir. 2011) (citing *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004)).  To that end, Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief."  The pleading standard announced by Rule 8 does not

- 4 -

require detailed factual allegations; it does, however, demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citation omitted).  In addition, the plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (internal citation omitted).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  But, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).  Furthermore, "[when] deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached [thereto], matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2011).

## IV.   Analysis

With the foregoing legal principles in mind, the Court must determine whether Whitlock

has stated a claim to relief for tortious interference with a prospective economic advantage that is plausible on its face.

Under New Jersey law, Whitlock must show that it had a reasonable expectation of an economic advantage that was lost as a direct result of Cmax's malicious interference, and that it suffered losses thereby. *See Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 306 (2001). Thus, in order to state a claim for tortious interference with a prospective economic advantage or contractual relationship, Whitlock must plead the following elements: (1) that it had "some protectable right—a prospective economic or contractual relationship"; (2) that Cmax interfered intentionally and with malice; (3) a causal connection between Cmax's interference and the loss of prospective gain; and (4) that the injury caused damage. *Printing-Mart Morristown v. Sharp Elec. Corp.*, 116 N.J. 739, 751-52 (1989).

In seeking dismissal of Count Three, Cmax contends that Whitlock failed to plead that it had a protected right. (Cmax Moving Br. at 6). Conversely, Whitlock contends that its "detailed and specific 147-paragraph complaint more than satisfies the *Iqbal* and *Twombly* standards." (Whitlock Opp. Br. at 2).

The Court agrees with Whitlock and finds that it has sufficiently pleaded a claim for tortious interference with a prospective economic advantage. With regard to the first element, a complaint seeking relief based on a theory of "tortious interference must allege facts that show some protectable right—a prospective economic or contractual relationship." *Printing-Mart Morristown*, 116 N.J. at 751. "[T]he right need not equate with that found in an enforceable contract[; instead,] there must be allegations of fact giving rise to some reasonable expectation of economic advantage." *Ibid.* (internal citation and quotation marks omitted). In other words, a complaint need only contain facts demonstrating that a party was "in pursuit of business." *Ibid.*

(internal quotation marks omitted).  In this case, Whitlock alleges that on June 30, 2006, it began negotiating a possible takeover agreement with Arch, (Whitlock Compl. ¶ 71), and that it sent Arch at least seven drafts of the takeover agreement that Whitlock was willing to execute. (*Id.* ¶ 78).  Whitlock avers that it reasonably expected to execute the takeover agreement with Arch in September or October of 2006.  (*Id.* ¶ 119).  Based upon these allegations, the Court can deduce that Whitlock had a reasonable expectation of economic advantage because the factual allegations clearly demonstrate that Whitlock was in the pursuit of business.  Thus, the Court is satisfied that Whitlock has alleged facts that establish the existence of a protectable right.[2]

As to the second element, the Court finds that Whitlock has alleged that Cmax's interference was intentional and done with malice.  "[F]or purposes of this tort, 'the term malice is not used in the literal sense requiring ill will . . . .'  Rather, malice is defined to mean that the harm was inflicted intentionally and without justification or excuse."  *Printing-Mart Morristown*, 116 N.J. at 751.  In this case, Whitlock alleges that "Cmax interfered with Whitlock's prospective economic advantage by filing its grossly overstated Lien Claim," (Whitlock Compl. ¶ 120), and that such interference was "intentional, malicious, and without justification or excuse."  (*Id.* ¶ 121).  That is, Cmax "sought to obtain improper leverage over Whitlock during the ongoing negotiations relating to Arch's possible take over of Cmax's work . . . to force Whitlock to permit Cmax to return as [the] . . . contractor."  (*Id.* ¶ 87).  To that end, Whitlock has adequately pleaded facts satisfying the second element of the analysis.

---

[2] Cmax's reliance on *Derobbio v. Harvest Communities of Sioux City, Inc.*, No. 01-1120, 2002 U.S. Dist. LEXIS 26706, at *22 (D.N.J. Oct. 30, 2002) is misplaced for the following two reasons.  First, *Derobbio* does not stand for the proposition that Cmax so claims, that is "[a] protectable economic interest arises when there is a substantial likelihood that a party will be awarded a contract."  (Cmax Reply Br. at 2).  Indeed, in *Derobbio* the court held that "[t]he mere existence of a long-term business relationship or past business deals is insufficient to establish a protectable economic right."  *Derobbio*, 2002 U.S. Dist. LEXIS 26706, at *21, *22.  Accordingly, Cmax's reliance on *Derobbio* for its claimed proposition is not supported in law.  Second, the plaintiffs in *Derobbio*, unlike Whitlock here, failed to "allege any existing contract, contract negotiations, or invitation to deal."  *Id.* at *22.  For that reason, too, Cmax's reliance on *Derobbio* is inapposite.

The Court also concludes that Whitlock has alleged facts demonstrating a causal connection between Cmax's interference and the loss of prospective gain.  For example, Whitlock alleges that Cmax's interference—the filing of the grossly overstated Lien Claim— "caused the loss of prospective gain in that it delayed by several months execution of the takeover agreement and completion of the [w]ork required by the Contract.  Without such interference, there would have been a reasonable probability that Whitlock would have obtained the anticipated economic benefit of the takeover agreement much sooner."  (*Id.* ¶ 122).  As such, Whitlock has adequately alleged the "causal connection" element required for this tort.

As to the final element, the Court finds that Whitlock adequately pleaded damages. Indeed, Whitlock alleges that Cmax's willful overstatement of its Lien Claim caused Whitlock to lose, among other things, the benefit "of Low Income Housing Credits."  (*Id.* ¶ 91).

Accepting Whitlock's allegations as true, as this Court must for purposes of a Rule 12(c) motion, the Court finds that Whitlock has adequately pleaded the requisite elements that encompass a claim for tortious interference with prospective economic advantage.  Therefore, Whitlock has stated a claim to relief that complies with the pleading principles announced in *Iqbal* and *Twombly*.  Accordingly, Cmax's motion for judgment on the pleadings is denied.[3]

---

[3] Cmax also argues that it was a party to the economic relationship, and thus cannot be held liable for the alleged interference.  Specifically, Cmax contends that "although it was not a signatory to the takeover agreement between Whitlock and Arch, . . . the takeover agreement would have never existed but for Cmax's role . . . [on] the . . . underlying . . . bond."  (Cmax Reply Br. at 3, 4) (citing *Telmark Packaging Corp., Inc. v. Nutro Lab. and Nature's Bounty*, No. 05-3049, 2008 U.S. Dist. LEXIS 45, at *11-12 (D.N.J. Jan. 2, 2008)).  The Court is not persuaded for three reasons.  First, the Court concludes that Cmax was not a party to the economic relationship as it was not a party to the actual *takeover agreement*.  Cmax concedes this particular point in its brief, explaining that "the takeover agreement [was] between Whitlock and Arch" and that it "was not a signatory to the takeover agreement." (Cmax Reply Br. at 3, 4).  Further undermining Cmax's position is the title of the actual document—"Surety Takeover Agreement . . . Between Arch Insurance Company and Arch Reinsurance Company, Whitlock Mills, LP, and the New Jersey Housing and Mortgage Finance Agency," as well as the first paragraph of the agreement, which provides, "[t]his Surety Takeover Agreement is made . . . by and between *Arch Insurance Company and Arch Reinsurance Company and Whitlock Mills*."  (Docket Entry No. 193-6) (emphasis added).  Therefore, Cmax was neither a party to the takeover agreement, nor, logically, a party to that economic relationship.  Accordingly, Whitlock may seek relief from Cmax under a theory of tortious interference with a prospective economic advantage.  *See Roberts v. Newark Pub. Sch.*, 232 F. App'x 124, 128 (3d Cir. 2007) (holding that under New Jersey Law a cause

## V.    Conclusion

For the foregoing reasons, Cmax's motion seeking judgment on the pleadings as to Count

Three of Whitlock's Fourth-Party Complaint is denied.


s/Esther Salas
**Esther Salas, U.S.D.J.**

---

of action for tortious interference with an economic relationship "only lies 'against defendants who are not parties to the relationship.'") (quoting *Printing-Mart Morristown*, 116 N.J. at 752); *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 772 (D.N.J. 1995) ("[A]n action for tortious interference with a prospective economic relation can not [sic] be sustained where the claim is by one party against the other party to the contract and not against a third party interloper who has interfered with the contractual relationship.") (internal citation and quotation marks omitted).  Second, Cmax's reliance on *Telmark* is misplaced.  In *Telmark*, the plaintiff's tortious interference claim arose out of a *contract that it had with the defendant*.  *Id.* at *11 (emphasis added).  As a result, the court held that the plaintiff could not maintain an action against the defendant because "[i]n New Jersey, a claim of intentional interference with a prospective economic relationship may not be brought against a defendant who was [a] party to that relationship."  *Id.* at *12.  By contrast, the agreement at issue here is the takeover agreement between Whitlock and Arch, to which Cmax was not a party.  Thus, *Telmark* does not support the legal argument that Cmax attempts to raise.  Finally, Cmax fails to provide the Court with any authority supporting its position that because it was the principal to the bond of the original contract, it cannot be held liable for tortiously interfering with a subsequent agreement to which it was not a party.  For these reasons, the Court finds Cmax's alternative arguments unavailing.