NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DELUXE BUILDING SYSTEMS, INC.,** : <br> : <br> **Plaintiff,** : <br> : <br> v. : <br> : <br> **CONSTRUCTAMAX, INC., et al.,** : <br> : <br> **Defendants.** : | **Civil Action No.: 06-2996 (ES)** <br><br> **OPINION** |

**SALAS, District Judge**

**I.   Introduction**

Before the Court is a motion for summary judgment filed by Arch Insurance Company and Arch Reinsurance Company (collectively, "Arch") pursuant to Federal Rule of Civil Procedure 56.  (*See* Docket Entry No. 289).  Arch seeks an order dismissing Deluxe Building Systems, Inc.'s ("Deluxe") Amended Complaint with prejudice.  (*See* Docket Entry No. 289-3). The Court has considered the parties' submissions in support of and in opposition to the instant motion, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons set forth below, Arch's motion is denied.

**II.   Background**[1]

Arch and Deluxe are not strangers to this litigation.  To that end, the Court only recounts the essential facts necessary to determine the legal issues presented by Arch's motion.

---

[1] To minimize the potential for confusion, the Court refrains from labeling either party as "plaintiff" or "defendant" because virtually all parties to this complex case have filed cross and/or counterclaims.

On April 23, 2004, Whitlock Mills L.P. ("Whitlock") and Constructamax, Inc. ("Cmax") entered into a construction contract, which was later amended on April 26, 2004 by way of a letter agreement. (Docket Entry No. 213, Whitlock Mills L.P.'s First Amended, Restated and Consolidated Answer, Counterclaims, and Fourth-Party Complaint ¶¶ 7, 8). Under the terms of the contract, Cmax was required to construct 330 units of mixed-income rental housing on a historic mill property located in Jersey City, New Jersey. (*Id.* ¶ 9). To assist with this endeavor, Cmax, on November 3, 2004, entered into an Agreement with Deluxe—a modular home builder. (Deluxe Amen. Compl. at ¶¶ 1, 11). Pursuant to this Agreement, Deluxe was to manufacture and install modular units in twenty-nine buildings located at the Jersey City construction site. (*Id.* ¶ 14). In return, Deluxe was to receive $ 10,847,947. (Arch SMF ¶ 3).

At some point during the course of construction, disputes between Deluxe and Cmax arose, "which resulted in [the] withholding of payments and threats from both parties of declarations of default." (*Id.* ¶ 8). In an effort to resolve the disputes, Deluxe and Cmax entered into an Amended Agreement on January 6, 2006. (*Ibid.*).

Notwithstanding the Amended Agreement and the parties' apparent willingness to reconcile, disputes between Deluxe and Cmax continued. According to Deluxe, Cmax "breached the Agreement by, among other things, failing to pay for goods and services[, which] were manufactured and delivered to the project site." (Deluxe Amen. Compl. ¶ 15). As a result, "Deluxe terminated its performance as of May 26, 2006." (*Id.* ¶ 18).

Deluxe alleges that on May 26, 2004, Arch "issued a Payment and Performance Bond to Cmax," (*id.* ¶ 24), which "assure[d] payment [to subcontractors] if Cmax fail[ed] to perform its obligations under its . . . contract with [Whitlock]." (*Id.* ¶ 25). Deluxe asserts that "[t]he Bond . . . is for the benefit of any subcontractor, materialman, laborer, person, firm or

corporation having a just claim . . . ." (*Id.* ¶ 26). In other words, should Cmax fail to perform its obligations under the Bond, "[t]he Bond obligates Arch to pay[out] just claims." (*Id.* ¶ 27). To that end, Deluxe—a subcontractor of Cmax—"filed a claim under the Bond with Arch for payments of [the] amounts due and owing from Cmax." (*Id.* ¶ 30). Arch, in response, "denied Deluxe's claim," and thus, according to Deluxe, "failed to honor [its] obligations to Deluxe under the bond." (*Id.* ¶¶ 32, 33).

In light of the preceding facts, Deluxe filed suit against Cmax on June 30, 2006. (*See* Docket Entry No. 1). On October 13, 2006, Deluxe filed an Amended Complaint "to add Arch, the suret[y] for Cmax . . . ." (Deluxe Amen. Compl. ¶ 2).

On June 10, 2011, Arch filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Arch contends that summary judgment should be entered for three reasons. First, Arch contends that "Cmax is entitled to a credit against . . . Requisitions [8, 9, and 10] in the amount of $ 250,000.00." (Arch Moving Br. at 13). Second, Arch argues that Deluxe is not entitled to the five percent retainage originally withheld by Cmax. (*Id.* at 15-18). Finally, Arch asserts that Deluxe is not entitled to "approximately $ 180,000 in extra work," which was comprised of, *inter alia*, "interior work to remediate water damage." (Arch Reply Br. at 10). Deluxe has opposed this motion. As such, the dispute is now ripe for this Court's adjudication.

**III.     Legal Standard**

Summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010) (quoting *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (*en banc*) (citing Fed. R. Civ. P. 56)). "To be material, a fact must have the potential to

alter the outcome of the case." *DeShields v. Int'l Resort Props.*, No. 11-2672, 2012 U.S. App. LEXIS 3580, at *5 (3d Cir. Feb. 23, 2012) (internal citation omitted). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Azur*, 601 F.3d at 216. "In determining whether summary judgment is warranted '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *DeShields*, 2012 U.S. App. LEXIS 3580, at *5 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## IV. Analysis

### A. The $ 250,000.00 Credit

As a preliminary matter, Arch contends that "Cmax is entitled to a credit against . . . Requisitions [8, 9, and 10] in the amount of $ 250,000.00." The Court revisits this argument in summary fashion because the Court already addressed this issue when Cmax raised it.

"The interpretation of a contract is ordinarily a legal question for the court and may be decided on summary judgment unless there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation . . . ." *Celanese Ltd. v. Essex Cnty. Imp. Auth.*, 404 N.J. Super. 514, 528 (App. Div. 2009) (internal citation omitted). Furthermore, "'[t]he interpretation of the terms of a contract are decided by the court as a matter of law unless the meaning is both unclear or the meaning is dependent on conflicting testimony.'" *Ibid.* (quoting *Bosshard v. Hackensack Univ. Med. Ctr.*, 345 N.J. Super. 78, 92 (App. Div. 2001)). However, "'when the terms of [a] . . . contract are clear, it is the function of a court to enforce it as written and not to make a better contract for either of the parties.'" *Mylan Inc. v. Smithkline Beecham Corp.*, No. 10-4809,

2010 U.S. Dist. LEXIS 112035, at *6 (D.N.J. Oct. 20, 2010) (quoting *Kampf v. Franklin Ins. Co.*, 33 N.J. 36, 43 (1960)). "In determining whether contractual language is ambiguous, [the court] consider[s] 'the contractual language, the proffer of the parties, and the extrinsic evidence offered in support of each interpretation.'" *Local 827 Int'l Bhd. of Elec. Workers v. Verizon N.J., Inc.*, 192 F. App'x 132, 135 (3d Cir. 2006) (quoting *Local Union No. 1992, Int'l Bhd. of Elec. Workers v. Okonite Co.*, 189 F.3d 339, 341 (3d Cir. 1999)).

In light of these legal principles, the Court declines to grant summary judgment for the following two reasons. First, having considered the contractual language, in conjunction with the parties' proffers, the Court finds ambiguity in the language of paragraph 7B.[2] Specifically, the Court questions whether the term "remaining billings" refers to either *outstanding Requisitions* between the date the parties entered into the Amended Agreement—January 6, 2006—and the date Cmax elected to accept the credit, *i.e.*, June 15, 2006, or *future Requisitions*, that is Requisitions that would have been submitted after Cmax elected to receive the credit. For that reason, the Court is uncertain whether Cmax is entitled to have the $ 250,000.00 credit apply to Requisitions 8, 9, and 10, which predate June 15, 2006. Second, the evidence offered by Arch—the deposition transcript of Dan S. Meske—does not support its contention that the credit can be applied to Requisitions 8, 9, and 10. In fact, Mr. Meske's testimony further muddies this issue. For example, Mr. Meske testified that he did not know whether it was proper for Cmax to apply the $ 250,000.00 credit to the remaining balance due. (*See* Meske Dep. 72:19-25; *see also* Meske Aff. ¶¶ 5, 6) ("Under the plain language of the Amendment, any $ 250,000 credit to be

---

[2] Paragraph 7B of the Amended Agreement between Deluxe and Cmax provides, in relevant part:

> [Cmax] may elect, on or before June 15, 2006, to accept a credit of Two Hundred and Fifty Thousand Dollars ($250,000) against the Contract Sum, to be credited pro rata over remaining billings under the Agreement . . . .

(Docket Entry No. 292-9, Amended Agreement ¶ 7B).

elected by Cmax would not be effective <u>until</u> Cmax made such an election, and any such credit would then be prorated over <u>remaining</u> billings on the Project. . . .  Deluxe negotiated for 'remaining billings' [] because application of the credit in this fashion would mean that Deluxe would have received the total contract sum less the credit.") (emphasis in original).  For these reasons, the Court concludes that uncertainty and ambiguity persists.  Consequently, the Court declines to grant Arch's motion for summary judgment.  *See Celanese Ltd.*, 404 N.J. Super. at 528 ("The interpretation of a contract is ordinarily a legal question for the court and may be decided on summary judgment *unless there is uncertainty [or] ambiguity*.") (emphasis added).[3]

### B.   Retainage

The Court next determines whether a genuine issue of material fact exists relating to Deluxe's claim for retainage.

In seeking summary judgment, Arch contends that "retainage is not due to Deluxe because there were issues with the product that Deluxe supplied *prior to termination*."  (Arch Moving Br. at 16) (emphasis added).  Arch further contends that "Deluxe has not earned [its] retainage [because] that retainage has already been exhausted to correct Deluxe deficiencies after Deluxe refused to perform the corrective work," (*id.* at 15), "and in so doing, . . . has incurred costs far in excess of the Deluxe retainage."  (*Id.* at 16).  The Court finds that Arch is advancing two separate arguments, and thus, addresses each in turn below.

### 1.   The Deluxe Product

The Court first determines whether a genuine issue of material fact exists in connection with the product that Deluxe supplied *prior to termination*, *i.e.*, May 26, 2006.

---

[3] The Court declines to address Deluxe's *alternative* argument that "Arch is not permitted to utilize the . . . $ 250,000.00 credit to reduce its liability," (Deluxe Opp. Br. at 28), because even if Arch is entitled to "assert all of its principal's defenses," (Arch Reply Br. at 6), it is unclear—as articulated above—whether Cmax is entitled to have the $ 250,000.00 credit apply to Requisitions 8, 9, and 10.  Thus, Deluxe's argument and Arch's response thereto is moot.

To recapitulate, summary judgment is appropriate "where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Azur*, 601 F.3d at 216. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Ibid.*

Based upon the foregoing, the Court finds that Arch has failed to sustain its burden—as the moving party—to point to evidence demonstrating that no issue of material fact exists. Indeed, there are genuine issues of fact relating to whether there were issues with the work product that Deluxe supplied under its Agreement with Cmax. Specifically, Deluxe has proffered testimony from Dan S. Meske—Deluxe's Vice President—who stated that "Deluxe . . . satisfactorily performed its work" in connection with Requisitions 8, 9, and 10 pursuant to the terms of the Contract Document. (Meske Aff. ¶ 27). Deluxe also provided the Court with an "Application and Certificate for Payment" or AIA form. (Exhibit H, attached to Meske Aff.). This form demonstrates that both Cmax and the Architect—based upon on-site observations—were satisfied with Deluxe's work relating to those Requisitions. That is, both Cmax and the Architect certified that the "quality of the Work [was] in accordance with the Contract documents," and therefore concluded that payment be made in the "AMOUNT CERTIFIED." (*Ibid.*). Thus, before Deluxe left the Project site in approximately June 2006, Cmax and the Architect were satisfied with Deluxe's work product. To that end, the Court finds that Arch has failed to sustain its burden in pointing to evidence demonstrating that no issue of material fact exists with respect to whether there were issues with Deluxe's product prior to termination.

### 2. Arch's Utilization of the Retainage to Correct Deluxe's Alleged Deficient Work

In the Spring of 2007, following the execution of the Takeover Agreement, Arch contends that it discovered deficiencies that existed in the Deluxe Units, and that it used the retainage to correct the deficiencies after Deluxe refused to perform corrective work. (Arch SMF ¶¶ 27, 32). As a result, Arch asserts that Deluxe is not entitled to the retainage. By contrast, Deluxe argues that "[t]here are disputed issues of fact [relating to] the cost of repair work," and thus Arch's motion should be denied. (Deluxe Opp. Br. at 21). Specifically, "Arch cannot establish the cost of repairing work that is unrelated to the damage that occurred after 2006." (*Id.* at 20).

Based upon the Court's review of the parties' submissions, as well as the accompanying documents, the Court finds that there are at least three genuine issues of material fact, which prevent the Court from determining—as a matter of law—that Deluxe is not entitled to the retainage. First, the Court finds that it is unclear whether the retainage was used to correct deficient work allegedly caused by Deluxe, or whether the retainage was used to fix damage caused by vandals. For example, the project was shutdown from June 2006 through February 2007 and, during that time, the buildings were "vandalized, damaged and at times had squatters living in them." (Meske Aff. ¶ 15; Stos Dep. 52:21-22 ("Well, trespassers were able to get into the Deluxe units")). Some of the "vandals literally ripped out the power feeds from the electrical panels . . . , [which] caused damage to the electrical systems and to [the] walls." (Meske Aff. ¶ 15; *see also* Exhibit F to Meske Aff. (Photographs illustrating the damage inflicted by vandals in connection with the walls, electrical panels, windows, and floors); Stos Dep. at 51:10-15 ("The [vandalism after July 2006 included] the destruction and removal of electrical feeders, electrical risers. Hot water heaters being damaged and removed. Faucets being damaged and removed.

Plumbing connections [were] removed.  Walls [were] destroyed.  Destroyed windows being damaged and removed."); Mensche Dep. 19:5-9 (Noting that in July 2007, "there [were] a bunch of holes in the walls and in the ceiling and missing floors.  The sheetrock was missing, electrical wires were hanging and pipes were showing. . . .  It was a mess.")).  The vandals also stole "copper . . . from electrical wires and plumbing."  (Meske Aff. ¶ 15; Stos Dep. at 54:17-20; 55:13-15 (Noting that faucets and brass fittings were removed from units); Hadjandreas Dep. at 19:11-14 ("I [] witnessed theft of everything, any kind of metal, aluminum, copper, they stole wiring.  Anything that could be cashed in for scrap value was removed.")).

Second, it is also unclear whether the retainage was used to correct deficient work allegedly caused by Deluxe, or whether the retainage was used to correct damage resulting from the deficient work of another party.  For example, Deluxe disputes whether the work that was performed on the interior of the buildings was done to "correct" its work.  Deluxe's position is supported by sufficient documentary evidence.  (*See* Letter from John Saracco, dated May 10, 2006, attached as Exhibit E to Meske Aff. at 1 ("It should be noted that the exterior shell of the buildings was not completed . . . .  Deluxe will not continue finishing the interior of I-1 and I-2 until the exterior shell is complete.  This is the proper course of action because the buildings are still vulnerable to water penetration until the entire shell is complete.  Cmax will get back to us within a day as to how long they will need to complete the exterior shell."); Stos Dep. at 49:1-16 ("There were various areas [of the exterior of the buildings] that were incomplete, [] some of the panels were detached, some of the Tyvek, the weatherproofing membrane was starting to come off the buildings."); Mensche Dep. at 31:11-25; 45:20-25 ("The buildings were leaking all over. . . . When it rained, it looked like it was raining inside."  The water damage caused the sheetrock to turn brown and crumble, and as a result, the sheetrock needed to be replaced); Papadopoulos

Dep. at 65:2-4 (Noting that in some cases sheetrock was destroyed by water damage)). To that end, the Court finds that there are genuine issues of material fact regarding whether the retainage was used to correct deficient work allegedly caused by Deluxe.

Finally, the Court also finds that genuine issues of material fact exist as to whether Arch can apportion the percentage of corrective work that was done based upon alleged deficient work of Deluxe against the deficient work of others. Indeed, further obfuscating this issue is that neither Arch nor its consultant—John Stos—appear to have a clear-cut test, which would allow this Court to determine whether the work that was done after Deluxe left the site on May 26, 2006 was done to correct deficient work, or whether it was done to complete the project. (*See, e.g.*, Stos Dep. 98:18-24 (Demonstrating that Stos' calculations of corrective versus completive work done by subcontractors were *estimates* involving a "review of the documents and based on [his] knowledge of the project," but not an independent visual inspection of the project); Mensche Dep. at 61:1-16 (Indicating that R&M Repairs—the subcontractor that performed the interior completion work never had a conversation with anyone discussing what percentage of the work he did was to cure allegedly improper work by Deluxe); Hadjandreas Dep. at 59:21-25 (Noting that Dual Purpose Corporation—the subcontractor that performed the HVAC work "never provided estimates to Mr. Stos . . . allocating . . . labor costs to different categories of work that Dual Purpose did on the I Buildings")).

In light of the above, the Court is satisfied that Deluxe—as the non-moving party—has set forth specific facts demonstrating that a genuine issue of material fact exists such that a reasonable factfinder could rule in its favor. *Azur*, 601 F.3d at 216. Further compelling this Court's denial of Arch's argument here is that "[c]redibility determinations, . . . weighing of [] evidence, and . . . drawing of legitimate inferences [are required, which] . . . are jury functions,

- 10 -

not those of a judge . . . ruling on a motion for summary judgment . . . ." *Anderson*, 477 U.S. at 255. Therefore, the Court cannot conclude as a matter of law that Deluxe is not entitled to the retainage. Consequently, the Court denies this portion of Arch's motion for summary judgment.

### C. Deluxe's Claims Under the Bond[4]

Finally, the Court determines whether Deluxe is entitled to "[s]ums due . . . for extra interior work necessitated by the failure of Cmax to make the Units weathertight." (Deluxe Amen. Compl. ¶ 16b).

Article 4 of the Contract between Deluxe and Cmax provides what appears to be the relevant language. The provision is as follows:

> Notwithstanding any other provision in the Agreement, payment shall be made to [Deluxe] in full, for all *invoiced billings* on Units including approved change orders, together with delivery and installation charges as incurred, and requisitioned to [Cmax], without delay of any portion of the amount so invoiced and billed.

(Docket Entry No. 289-5) (emphasis added).

In light of this provision, Arch argues that "Deluxe never obtained a *change order* for any of th[e] alleged work and has not demonstrated that its work was anything more than corrective work arising out of its own defects." (Arch Moving Br. at 24) (emphasis added). "[I]n order for these claims to be valid bond claims, Deluxe would have to show that it . . . obtained, or at the very least had a valid right to, a change order increasing the scope of its work to include legitimate extra work on the project." (Arch Reply Br. at 11). Conversely, Deluxe contends that

---

[4] As a preliminary matter the Court notes that Deluxe, by way of its Amended Complaint, sought to recover reasonable attorneys' fees. (*See* Deluxe Amen. Compl. ¶¶ 35, 37, 40). Deluxe, however, agrees that "Arch is not liable for attorney's [sic] fees, lost profits, delay damages or interest that Cmax is responsible to pay under the Deluxe Contract." (Deluxe Opp. Br. at 24). Thus, the focus of Arch's motion—and logically this point of the Court's Opinion—is whether Deluxe may, under the Bond, pursue compensation for (1) interior work done to remediate water damage; (2) expenses incurred in mobilizing and demobilizing certain equipment; (3) lost tarps taken during site cleanup; (4) a credit of $ 25,000.00 for heat in Buildings 1-12; and (5) maintenance for temporary weatherproofing. (Answers of Plaintiff Deluxe Building Systems, Inc. to the First Interrogatories of Defendants Arch Insurance and Arch Reinsurance Company, attached as Exhibit N to Monahan Aff. at 8).

its "Interrogatory Answers provides [sic] the bates stamp numbers of the documents supporting such claims." (Deluxe Opp. Br. at 24). According to Deluxe, "[i]t is therefore unclear why Arch claims that such information has not been provided." (*Ibid.*).

Notwithstanding Deluxe's limited argument, the Court finds Deluxe's Interrogatory Responses telling. Of particular import to this Court is Deluxe's Response to Arch's First Interrogatory. Arch's First Interrogatory states: "[s]et forth in detail all facts which [y]ou may rely [sic] to support any claim or defense that [y]ou have asserted in this matter." (Answers of Plaintiff Deluxe Building Systems, Inc. to the First Interrogatories of Defendants Arch Insurance and Arch Reinsurance Company, attached as Exhibit N to Monahan Aff.). In response thereto, Deluxe claims that "Cmax breached the Agreement between Deluxe and Cmax dated November 3, 2004 [], as well as the Amendment to Agreement dated January 6, 2006 [] . . . by failing to pay for extra interior work necessitated by the failure of Cmax to make the Units watertight (*see . . . Paragraph 7 of the Amendment to Agreement*)." (*Id.* at 3) (emphasis added). Paragraph 7 of the Amended Agreement provides:

> [Deluxe] has certain claims against [Cmax] relating to an alleged failure to maintain the building's temporary weather protection, necessitating additional work to complete interior construction. [Deluxe] and [Cmax] agree that [Deluxe] shall complete such interior work, without waiver of such claims by [Deluxe] against [Cmax], and may assert such claim anytime in the future.

(Docket Entry No. 289-5 ¶ 7).

In light of the above, the Court finds that a genuine issue of material fact exists, and thus concludes that summary judgment is not warranted for the following two reasons. First, Article 4 of the Contract between Deluxe and Cmax unequivocally states that payment shall be made to Deluxe in full, "*for all invoiced billings*," which Arch concedes are part of the documents

referenced in Deluxe's Interrogatory Responses.[5] (*See* Arch Reply Br. at 11) ("A review of those documents reveals that they are . . . invoices concerning work performed on the Project by Deluxe or its subcontractors."). Thus, Arch's claim that an approved change order is required is undermined by the plain and unambiguous language contained in Article 4 of the Contract.

 Second, the Court also finds that a genuine issue of material fact exists based upon the language contained in Paragraph 7. Specifically, it is unclear whether—under a plain reading of Paragraph 7—Deluxe would need a change order to recover the costs associated with completing the interior work. In other words, the Amended Agreement between Deluxe and Cmax appears to suggest that Deluxe was to complete the interior work without waiving any claims, which it may choose to assert at anytime in the future. To that end, this Court concludes that a reasonable factfinder could rule that Deluxe was not required to obtain a change order because it entered into a subsequent agreement with Cmax that specifically addressed this issue. Furthermore, notably absent from this Paragraph is any limitation suggesting that Deluxe would be restricted from pursuing its claims if a change order was not issued.

 Therefore, in drawing all justifiable inferences in favor of Deluxe, *DeShields*, 2012 U.S. App. LEXIS 3580, at *5, the Court concludes that it has sustained its burden in setting forth specific facts demonstrating that a genuine issue of material fact exists such that a reasonable factfinder could rule in its favor." *Azur*, 601 F.3d at 216. Consequently, Arch's motion for summary judgment is denied.

---

[5] The documents at issue were provided to the Court by Arch.

## V. Conclusion

For the foregoing reasons, Arch's motion for summary judgment seeking dismissal of Deluxe's Amended Complaint is denied. An accompanying Order shall follow.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**
