UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DELUXE BUILDING SYSTEMS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**CONSTRUCTAMAX, INC., et al.,**<br><br>Defendants. | Civ. No. 2:06-cv-02996<br>(KM)(MAH) |
| **WHITLOCK MILLS, LP**<br><br>Plaintiff,<br><br>v.<br><br>**ARCH INSURANCE COMPANY, et al.,**<br><br>Defendants. | Civ. No. 2:06-cv-6288<br><br>(Consolidated cases)<br><br>**MEMORANDUM OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

     This motion comes before the Court upon the motion of Arch Insurance Company and Arch Reinsurance Company (collectively "Arch") to dismiss these consolidated cases for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), Fed. R. Civ. P. *See also* Fed. R. Civ. P. 12(h)(3) (court has ongoing duty to reexamine subject matter jurisdiction). To distinguish between the consolidated cases, Case No. 06 cv 02996 is here deemed the "Deluxe Action," and Case No. 06 cv 6288 is deemed the "Whitlock Action." The motion to dismiss is granted in part, as to the Whitlock Action only. In short, although Arch has a point, that point does not have the far-reaching consequences Arch ascribes to it. This opinion amounts to the dotting of a jurisdictional "i"; it leaves the essence of the claims intact.

Arch, a citizen of New Jersey, argues that the presence of intervenor, the New Jersey Housing and Mortgage Finance Agency (the "Agency"), destroys diversity subject matter jurisdiction and requires that these consolidated cases be dismissed in their entirety. Arch has made this argument before. Chief Judge Brown, to whom this case was previously assigned, rejected a similar contention in June 2011 when he permitted the Agency to intervene in the consolidated cases pursuant to Rule 24(b)(1)(B) (permissive intervention where a party "has a claim or defense that shares with the main action a common question of law or fact"). (Docket No. 284.) According to Arch, recent developments now make it clear that the Agency and Arch – both citizens of New Jersey – are "directly and unavoidably adverse." That being so, their dispute would constitute a "matter in controversy," but not one "between … citizens of different States." 28 U.S.C. § 1332(a)(1). Complete diversity, and therefore diversity jurisdiction, would therefore be lacking, unless the non-diverse claims fit under the court's supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

For reasons explained more fully below, the supplemental jurisdiction statute is asymmetrical; the availability of supplemental jurisdiction depends on whether the Agency is a plaintiff. The Agency intervened, pursuant to Rule 24, after the actions were consolidated, and may be considered a defendant in the consolidated case. Viewing the actions separately, however, it is clear that the Agency would be a defendant in one, but a plaintiff in the other. That seems to be where the confusion arises.

I hold that I may assert supplemental jurisdiction in the Deluxe action, in which the Agency is a defendant. I am required, however, to dismiss the Whitlock Action, in which the Agency is a plaintiff. In the end, however, it probably makes little difference. Whitlock also asserts its dismissed claims in the Deluxe Action. And the Agency, too, asserts the dismissed claims in the Deluxe Action, in its capacity as defendant, not plaintiff. (*See* Docket Nos. 213, 287.) Thus the parties' claims, in their full scope, remain before the court.

The jurisdictional wrangling here may have little significance other than to illustrate the pitfalls of trying to bring a complex, shifting, multiparty state law case to federal court. The purpose of this ruling is to remedy a jurisdictional flaw that might have furnished grounds to attack the final judgment in this case, whatever it may be.

## I. BACKGROUND

A. <u>The Whitlock Mills Project</u>

The facts and procedural history of the consolidated cases are well known to the parties. In 2004, Whitlock was the owner of a 330-unit rental housing development under construction in Jersey City known as Whitlock Mills (the "Whitlock Mills Project"). Whitlock and Constructamax, Inc. ("Cmax") entered into a construction contract (the "Construction Contract") under which Cmax would serve as the general contractor for the Whitlock Mills Project. In connection with the Construction Contract, Cmax obtained from its surety, Arch, a payment and performance bond in the penal sum of $34,581,371 (the "Arch Bond"). Whitlock financed the Whitlock Mills Project primarily through a loan from the Agency. Thus both Whitlock and the Agency had interests to protect, and both were made obligees under the Arch Bond.

Part of the Whitlock Mills Project involved pre-fabricated modular buildings known as I-Buildings. On November 3, 2004, Cmax and Deluxe Building Systems, Inc. ("Deluxe") entered into an agreement (the "Subcontract"), later amended by the parties on January 6, 2006. Under the Subcontract, Deluxe would manufacture the I-Buildings at its manufacturing facility in Berwick, Pa. and deliver them to the Whitlock Mills Project site. Cmax was then obligated under the Construction Contract to perform all site work, including the laying of concrete foundations, relating to the I-Buildings.

By all accounts, the Whitlock Mills Project was a flop. In April and May of 2006, Cmax failed to pay $928,720.66 that it allegedly owed Deluxe under the Subcontract. On June 16, 2006, Cmax abandoned work on the Whitlock Mills Project. In response, Whitlock, as obligee under the Arch Bond, made a demand on Arch as obligor. Negotiations ensued and, on February 13, 2007, Arch and Whitlock entered into a Takeover Agreement. That Takeover Agreement required Arch to complete the work under the Construction Contract on or before October 13, 2007. It is undisputed that the work was not completed within that nine-month deadline. Indeed, some 34 months after the date of the Takeover Agreement, Arch still had not completed the work. On December 11, 2009, Arch announced that it was terminating the Takeover Agreement and informed Whitlock that it intended to cease work on December 20, 2009.

B. <u>The Deluxe Action</u>

The procedural morass currently before this court had a much simpler origin: On May 17, 2006, Deluxe filed a breach of contract action in New Jersey Superior Court, Hudson County, alleging that Cmax had breached the Subcontract. On June 29, 2006, Cmax removed that Deluxe Action to this court, invoking diversity jurisdiction under 28 U.S.C. § 1332. (It is that removed action, assigned Civil No. 06-02996 in this court, that has now been deemed the "Deluxe Action.") On October 13, 2006, Deluxe filed an Amended Complaint which added Arch as a defendant. In the Amended Complaint, Deluxe asserted that Arch, as Cmax's surety, was obligated to pay the subcontractors, including itself, that Cmax had failed to pay. On November 16, 2006, Cmax filed an Answer to the Amended Complaint with a Counterclaim against Deluxe for damages it allegedly suffered as a result of Deluxe's deficient performance under the Subcontract. On the same day, Cmax filed a Third-Party Complaint against Whitlock and against Deluxe's surety, Travelers Casualty & Surety Company of America ("Travelers"). Travelers had issued a Performance Bond and Payment Bond (collectively, the "Travelers Bond") to Deluxe for its work as a subcontractor on the Whitlock Mills Project. In the Third-Party Complaint, Cmax alleged that Travelers as surety was liable for damages caused by Deluxe's breach of the Subcontract. Cmax's Third-Party Complaint also alleged that Whitlock had breached the Construction Contract by failing to pay sums allegedly due to Cmax.

C. <u>The Whitlock Action</u>

On December 29, 2006, Whitlock (as obligee) filed the Whitlock Action against Arch, alleging that Arch (Cmax's surety) had defaulted under the Arch Bond. On March 7, 2007, Arch filed an Answer and Counterclaim asserting that Whitlock's actions, including payment for work Whitlock later claimed to be defective, breached the terms of the Arch Bond. On March 19, 2007, Arch -- accused in both cases of defaulting on its obligations under the Arch Bond -- filed a motion to consolidate the Deluxe Action with the Whitlock Action under Rule 42(a), Fed. R. Civ. P.

D. <u>The Consolidation</u>

In an Opinion and Order filed July 2, 2007, then-Magistrate Judge Salas granted Arch's motion to consolidate. The consolidation order deemed the Deluxe Action (the first filed case) the "Lead Action." (Docket No. 39.) The Whitlock Action was administratively terminated and all filings in the consolidated cases were thereafter made on the docket for the Deluxe Action.

Two months after consolidation, Whitlock filed an answer, counterclaims, and a Fourth-Party complaint in the Deluxe Action. Whitlock's Fourth-Party Complaint asserted claims against Cmax and Cmax's CEO, Photios Cougentakis, for breach of the Construction Contract. (Docket No. 52.) In January 2009, Whitlock to amended its Fourth-Party complaint in the Deluxe Action to add claims against Cmax's surety, Arch, for breach of the Arch Bond and Takeover Agreement. (Docket Nos. 126, 129.) As to the Arch Bond, these claims essentially duplicated those asserted earlier in the Whitlock Action.[1]

E. Other Relevant Rulings Prior to the Agency's Intervention

A brief review of the major rulings in the now-consolidated cases will help to frame the rest of the discussion.

On January 13, 2009, Chief Judge Brown entered a bifurcation order. It provided that liability issues be decided first, with a damages phase to follow.

On May 6, 2010, Chief Judge Brown issued two separate summary judgment opinions finding Cmax liable to Deluxe for breaching the Subcontract, and to Whitlock for breaching the Construction Contract. In the first (Docket No. 203), Judge Brown concluded that "no reasonable finder of fact could fail to decide that Cmax breached the [Subcontract] and is liable to Deluxe for damages." (*Id.* at 5.) In the second (Docket No. 205), Judge Brown granted Whitlock's motion for summary judgment on its counterclaim against Cmax for breach of the Construction Contract. Judge Brown reasoned that "an application of the undisputed facts in this case to the plain language of the [Construction] Contract yields the Court's conclusion that Cmax materially breached the [Construction] Contract and is liable to Whitlock for the damages resulting therefrom." (*Id.* at 9.)

Cmax having been found liable to Whitlock, the obligations of Arch came to the foreground. Arch, as Cmax's surety and obligor, was potentially liable to Whitlock as obligee under the Arch Bond. Arch had also taken on independent obligations to Whitlock pursuant to the Takeover Agreement. On February 8, 2011, Judge Brown addressed dueling claims by Whitlock and Arch under the Arch Bond and the Arch/Whitlock Takeover Agreement. (Docket No. 259.) He granted summary judgment in Whitlock's favor, finding that Arch was liable on the Arch Bond and had breached the Takeover Agreement. (*Id.* at 7-8.) Judge

---

[1] The Takeover Agreement claims, however, were new; that Agreement did not yet exist when the Whitlock Action was filed.

5

Brown rejected as a matter of law Arch's defense that Whitlock sought reimbursement for items on which it had overpaid. (*Id.* at 8-9.)

To sum up, then, by the time the Agency moved to intervene in March of 2011, the Court had already: (1) found Cmax liable to Deluxe for breach of the Subcontract; (2) found Cmax liable to Whitlock for breach of the Construction Contract; and (3) found Arch liable to Whitlock on the Arch Bond and for breach of the Takeover Agreement.

### F. The Agency's Intervention

In March 2011 the Agency moved to intervene in the consolidated cases. The docket for the Whitlock Action had previously been administratively terminated, so the Agency's motion to intervene – like all filings after consolidation – was filed on the docket of the Lead Action, *i.e.*, the Deluxe Action. Arch and Cmax opposed the Agency's intervention and filed a cross-motion to dismiss the action for lack of subject matter jurisdiction. Arch and Cmax argued that the Agency was an indispensable party, and that because the Agency was not diverse from Arch, the consolidated action should be dismissed in its entirety for lack of subject matter jurisdiction. Judge Brown rejected these arguments and permitted the Agency to intervene, despite the lack of complete diversity, under the supplemental jurisdiction statute, 28 U.S.C. § 1367. (Docket No. 284.) Judge Brown determined that the Agency was aligned with Whitlock and stated that "[s]ince this case's inception, Whitlock has been a defendant." (*Id.* at 4.) Judge Brown's opinion did not separately analyze the jurisdictional issues as to the Deluxe Action and the Whitlock Action, or note that in the latter, Whitlock (with which the Agency was aligned), was plaintiff.

On June 8, 2011, two days after the Judge Brown approved the Agency's intervention, the Agency filed a Fifth-Party Complaint against Arch asserting breach of the Arch Bond and Takeover Agreement. This Fifth-Party Complaint substantially duplicated Whitlock's claims against Arch, as to which Judge Brown had already awarded summary judgment on liability. (Docket No. 287.)

### G. Post-Intervention Developments

Following the Agency's intervention, Whitlock discovered additional latent construction defects allegedly caused by Arch and Cmax. Whitlock estimated that to remediate those defects would cost over $10 million. Whitlock attempted to raise additional funds to complete the Whitlock Mills Project. When those financing efforts failed, Whitlock and the Agency agreed that (1)

Whitlock would deed the Whitlock Mills Project to the Agency, and (2) Whitlock and the Agency would continue to prosecute their pending claims jointly, with the proceeds being shared pursuant to an agreed-upon plan. Those factual developments serve as the basis for Arch's renewed motion to dismiss. According to Arch, Whitlock's deeding of the property to the Agency in January 2012 means that "the Agency and Arch are now undeniably aligned in a classic plaintiff-defendant relationship with direct and complete adversity of interests." (Docket No. 386-1, at 1.)

## II.   DISCUSSION

### A. Complete Diversity, Alignment of Parties, and Independence of Consolidated Actions For Jurisdictional Purposes

A federal district court is one of limited subject matter jurisdiction. "[F]ederal courts have an ever-present obligation to satisfy themselves of their subject matter jurisdiction and to decide the issue *sua sponte* . . . ." *Liberty Mut. Ins. Co. v. Ward Trucking Corp.*, 48 F.3d 742, 750 (3d Cir. 1995). Under Fed. R. Civ. P. 12(h)(3), a federal court is required to dismiss an action "if [it] determines *at any time* that it lacks subject matter jurisdiction." (emphasis added). That obligation is paramount, because subject matter jurisdiction issues "call into question the very legitimacy of a court's adjudicatory authority." *Council Tree Comm., Inc. v. FCC*, 503 F.3d 284, 292 (3d Cir. 2007) (the law of the case doctrine does not bar a merits panel from revisiting a motions panel's assumption of subject matter jurisdiction) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)).

Subject matter jurisdiction is analyzed here under the familiar "complete diversity" rule of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). If any plaintiff and any defendant are citizens of the same state, diversity is broken and the action must be dismissed, unless some other basis for jurisdiction may be found. Before analyzing diversity, however, the court must perform two preliminary tasks: (a) it must view the actions separately, despite their consolidation; and (b) it must realistically align each party as plaintiff or defendant.

I agree with Arch that the order consolidating these two cases did not create a single case for jurisdictional purposes. The Supreme Court's 80-year-old decision in *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479 (1933), holds true today: "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the

rights of the parties." *Id.* at 496-97. The Third Circuit has since confirmed its view that "*Johnson* remains the 'authoritative' statement on the law of consolidation." *Newfound Management Corp. v. Lewis,* 131 F.3d 108, 116 (3d Cir. 1997) (*quoting* 9 Wright & Miller, *Federal Practice & Procedure* § 2382 (2d ed. 1995)). The Third Circuit construes *Johnson* as prohibiting the treatment of consolidated cases as a single action where doing so would diminish or enlarge the rights of a party. *Id.* at 117; s*ee also Cella v. Togum Constructeur Ensemleier en Industrie Alimentaire,* 173 F.3d 909, 912-13 (3d Cir. 1999); *Bradgate Associates, Inc. v. Fellows, Read & Associates, Inc.,* 999 F.2d 745, 750 (3d Cir. 1993). That includes cases in which consolidated treatment would implicate the court's jurisdiction. Thus in *Cella,* for example, the district court consolidated two actions brought by the same plaintiff. There was diversity jurisdiction as to one action, but not as to the other, and the court determined that supplemental jurisdiction over the second action was not appropriate. The district court concluded that it therefore lacked jurisdiction over the entire consolidated case. 173 F.3d at 910. The Court of Appeals reversed, holding that the district court should have analyzed the cases separately, retained the one as to which it possessed diversity jurisdiction, and dismissed the other.[2] *Id.* at 912-13.

As I read *Johnson, Cella* and *Bradgate,* I must notionally deconsolidate these cases for the purpose of analyzing diversity. I will therefore analyze subject matter jurisdiction separately as to the Deluxe Action and the Whitlock Action, despite their consolidation.

Before doing so, however, I must also consider the alignment of the parties. The court has a duty to align, and if necessary realign, the parties with respect to the actual controversy, looking beyond the formal designations of the complaint. *Development Fin. Corp. v. Alpha Hous. & Health Care, Inc.,* 54 F.3d 156, 161 (3d Cir. 1995). Such party alignments may have jurisdictional consequences. For purposes of diversity jurisdiction, for example, it obviously matters whether citizens of the same state are on the same, or opposite, sides. For purposes of supplemental jurisdiction, *see infra,* it may be critical whether a party is deemed a plaintiff. Thus the alignment analysis must precede the analysis of subject matter jurisdiction. *See id.* at 160.

I find that the Agency is properly aligned with Whitlock in this dispute. The Agency's interest arises from its status as Whitlock's lender. The Agency is

---

[2] A complicating factor, the district court's decision to transfer or "remand" the case to state court, is not relevant here.

Whitlock's co-obligee on the Arch Bond, and asserts its claims against Arch on that basis. That identity of interests between Whitlock and the Agency was, if anything, strengthened by Whitlock's subsequent deeding of the property to the Agency. It has always been clear, however, that the Agency's interests coincide with those of Whitlock and collide with those of Arch.

In the Deluxe Action, then, this court (like Chief Judge Brown) considers the Agency to be aligned with Whitlock *as a defendant.*[3] The Agency's intervention occurred post-consolidation, but it was, viewed from the narrow perspective of the Deluxe Action, an intervention as defendant (albeit a defendant that intended to assert claims of its own). Until the Agency intervened, the parties were completely diverse. Complete diversity was disrupted, however, by the Agency's intervention, which resulted in the Agency and Arch, both New Jersey citizens, standing on opposite sides of the Deluxe Action. That circumstance, standing alone, would defeat diversity subject matter jurisdiction. As established below, however, I may preserve jurisdiction and hear non-diversity claims between the Agency and Arch pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367(a).

In the Whitlock Action, too, the court must align the Agency with Whitlock, but here Whitlock is the *plaintiff.* Although the Agency intervened

---

3   Arch's revived motion is premised on the contention that, because Whitlock has deeded the property to the Agency, "the Agency and Arch are now undeniably aligned in a classic plaintiff-defendant relationship with direct and complete adversity of interests." (Docket No. 386-1, at 1.) In Arch's view, the Agency is now, for the first time, directly and unavoidably adverse to Arch. I do not agree that this new fact changes the jurisdictional analysis. Chief Judge Brown, in his ruling permitting the Agency to intervene pursuant to Fed. R. Civ. P. 24(b), clearly stated that he was aware that the Agency and Arch had direct and complete adversity of interests: "the Agency is properly aligned as a defendant, beside its co-defendant Whitlock, and *adverse to both Arch and Cmax.*" (ECF No. 284, at 5)(emphasis added). Judge Brown was also aware that the Agency was poised to assert claims against Arch: "the Court will allow the Agency to intervene as a defendant in the case *and assert the claims against Arch that the Agency has proposed.*" (*Id.*)(emphasis added). Judge's Brown's decision that the Agency's intervention would not destroy subject matter jurisdiction was based on his party alignment analysis as it bore on the supplemental jurisdiction statute. The Agency always was aligned with Whitlock against Arch, if only because the Agency and Whitlock are co-obligees on the Arch Bond. That the Agency now holds the deed to the Whitlock Mills Project site does not change, but only reaffirms, the party alignment recognized by Judge Brown.

9

after consolidation, its status must still be viewed from the perspective of each unconsolidated action. From the perspective of the Whitlock Action, the Agency necessarily intervened on the side of Whitlock, as plaintiff. The Agency's presence destroyed diversity, because the Agency and defendant Arch, both New Jersey citizens, now stood on opposite sides of the Whitlock Action. By contrast with the Deluxe Action, however, in the Whitlock Action I may not preserve jurisdiction and entertain this non-diversity claim pursuant to the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). The following section explains why.

### B. Supplemental Jurisdiction and the Plaintiff Exclusion

Before intervention, there indisputably was complete diversity, and the court possessed subject matter jurisdiction over all claims. The Agency having intervened, however, the question becomes whether this court may continue to hear the preexisting diversity claims, while exercising its supplemental jurisdiction over the new claims involving the Agency, a non-diverse party.

A federal court may exercise supplemental jurisdiction over certain claims that could not otherwise be litigated in federal court. The basic standard is stated in 28 U.S.C. § 1367(a): a district court having original jurisdiction of a case "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." Thus a district court has the discretion to hear non-diversity claims, including those that "involve the joinder or intervention of additional parties," if they are sufficiently related to diversity claims.

That discretion, however, is limited by statute; it is subject to what I will call the "plaintiff exclusion." In a diversity case, the court may *not* exercise supplemental jurisdiction over

- claims "by plaintiffs," brought against non-diverse intervenors under Rule 24, Fed. R. Civ. P., or
- claims "by persons ... seeking to intervene as plaintiffs under Rule 24," brought against non-diverse parties.

*See* 28 U.S.C. § 1367(b).[4]

---

[4] More precisely:

The evident purpose of the section 1367(b) plaintiff exclusion "is to prevent a two-step evasion of the requirement of complete diversity of citizenship by a person who, being of the same citizenship as the defendant, waits to sue until a diverse party with which it is aligned sues the defendant, and then joins the suit as an intervening plaintiff." *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006). Consider a controversy between two plaintiffs and a defendant: PNJ (a citizen of New Jersey), PNY (a citizen of New York) and DNY (likewise a citizen of New York). If PNJ and PNY together sued DNY, the complete-diversity rule would bar subject matter jurisdiction, because PNY and DNY are both citizens of New York. But If PNJ, as sole plaintiff, sued DNY, there would be diversity. PNY could then intervene, and -- but for the "plaintiff exclusion" -- PNY's non-diverse case could be heard if it met the other requirements of supplemental jurisdiction. The "plaintiff exclusion" is designed to cut off this two-step stratagem for circumventing the *Strawbridge* complete-diversity rule.

Supplemental jurisdiction is thus asymmetrical; it may be granted to a party aligned as a defendant, but denied to the party if aligned as plaintiff. The rationale for that asymmetry seems to be that a defendant – who is not in the action by choice – has less ability or incentive to manipulate the diversity rules. Third Circuit precedent establishes that the plaintiff exclusion is construed literally; it applies only to actual plaintiffs. Thus "§ 1367(b) does not deprive the district court of supplemental jurisdiction over a counterclaim or cross-claim raised by an intervening defendant, even where the intervenor shares citizenship with an original party." *Alpha*, 54 F.3d at 161. Other circuits agree with the Third Circuit that "plaintiff" in § 1367(b) refers to the original plaintiff in the action, not to a counter-plaintiff, cross-plaintiff, or third-party plaintiff.[5]

---

(b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b).

[5] *See e.g.*, *State Natl. Ins. Co., Inc. v. Yates*, 391 F.3d 577, 580 (5th Cir. 2004) ("we hold that 'plaintiff' in § 1367(b) refers to the original plaintiff in the action - not to a defendant that happens also to be a counter-plaintiff, cross-plaintiff, or third-party-

11

Adopting a broader interpretation would render the "by plaintiffs" limitation ineffective, since any party, by filing some claim in a case, could thereby render itself a "plaintiff." Congress, if it wanted to, could have specified counter-plaintiffs, cross-claimants and third-party plaintiffs. It did not.

Of course, this "plaintiff exclusion" is somewhat arbitrary; in this scenario, not every plaintiff is necessarily guilty of jurisdictional manipulation, and not every defendant is innocent of it.[6] But especially in matters of jurisdiction and procedure, which require clear and workable rules, this court must apply the statute, not its perceived rationale. "Plaintiff" status is the signifier that Congress has chosen; the court will implement that jurisdictional limitation as enacted.

I reduce the foregoing principles, as they apply to this case, to two rules. The statutory "plaintiff exclusion" would potentially bar this court from exercising its supplemental jurisdiction

> (a) If Arch *as plaintiff* brought claims against the intervenor Agency; or

---

plaintiff."); *Grimes v. Mazda N. Am. Operations*, 355 F.3d 566, 572 (6th Cir. 2004) ("The supplemental jurisdiction provision, 28 U.S.C. § 1367(b), states congressional intent to prevent original plaintiffs - but not defendants or third parties - from circumventing the requirements of diversity."); *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 726-27 (2d Cir. 2000) ("Significantly, § 1367(b) reflects Congress' intent to prevent original plaintiffs - but not defendants or third parties - from circumventing the requirements of diversity."); *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 492 (4th Cir. 1998) ("Thus, the limitation of § 1367(b) applies only to *plaintiffs'* efforts to join nondiverse parties." (emphasis in original)).

I note, by the way, that the issue is frequently stated as requiring the court to classify the party as a plaintiff or a defendant. In the simple plaintiff vs. defendant scenario, that is accurate; every non-plaintiff is a defendant. Technically, however, the issue is whether the party is a plaintiff, or some other kind of party.

[6]   Section 1367(b), as a statutory fix, is thus both overinclusive and underinclusive. In *Aurora Loan Services, Inc. v. Craddieth*, 442 F.3d 1018, 1025 (7th Cir. 2006), Judge Posner raised the interesting issue of a non-diverse intervening plaintiff who would not have been able to sue when the original plaintiff did. In his view, the plaintiff exclusion should not bar "a party forced to intervene to protect an interest that arose during the course of a federal litigation in which he had no stake at the outset. Such a party has no say in deciding where the suit is brought and so cannot be gaming the system." *Id.* at 1025. I am not persuaded that the court possesses the discretion to withhold application of the plaintiff exclusion based on its perception of the underlying policy. Jurisdictional rules, in particular, should be as simple and predictable as possible.

> (b) If the Agency intervened *as plaintiff* and brought claims against Arch.

*See* 28 U.S.C. § 1367(b).

In the Whitlock Action, the "plaintiff exclusion" means that supplemental jurisdiction cannot rescue the case from the diversity-destroying effect of the Agency's intervention. In the Whitlock Action, as we have seen, the Agency must be regarded as a New Jersey plaintiff asserting claims against a New Jersey defendant, Arch. That procedural configuration runs afoul of Rule (b), above. To view it another way, the Agency, being of the same citizenship as Arch, waited until a diverse party (Whitlock) sued Arch and thereafter intervened as co-plaintiff. Section 1367(b) reflects a Congressional intent to defeat that two-step circumvention of the complete-diversity rule. The Whitlock Action is therefore dismissed for lack of subject matter jurisdiction under Rule 12(h)(3), Fed. R. Civ. P.

As for the Deluxe Action, however, the asymmetrical "plaintiff exclusion" does not apply, so the exercise of supplemental jurisdiction under § 1367(a) is permitted:

*First,* this procedural configuration does not run afoul of Rule (a), above, because, in the Deluxe Action, Arch is not a plaintiff; Arch is a defendant. Nor is that characterization purely a formal one. As surety, Arch is closely allied with Cmax, the defendant that Deluxe originally sued in the Deluxe Action. By definition, the claims that Arch asserts against Whitlock are not claims brought by a plaintiff.

*Second,* this procedural configuration does not run afoul of Rule (b), above, because the Agency, although it intervened in the Deluxe Action, did not intervene as a plaintiff. In the Deluxe Action, the Agency is a defendant, and it brings its non-diversity claims against Arch by means of a Fifth-Party Complaint. Section 1367(b) disallows supplemental jurisdiction only with respect to claims of plaintiffs, narrowly construed. "The section has little to say about defendants." *Alpha*, 54 F.3d at 160. That the Agency has filed a Fifth-Party Complaint in the Deluxe Action does not make it a "plaintiff" (or plaintiff-intervenor) for purposes of Section 1367(b). *Id.; see also* pp. 11-12 & n.5, *supra,* and cases cited.

Because the Agency is a defendant in the Deluxe Action, the "plaintiff exclusion" does not apply. This court's exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) is therefore permissible. Despite the Agency's status as a New Jersey defendant adverse to Arch, the Court will exercise supplemental jurisdiction over the Agency's claims in the Deluxe Action only. I will not reconsider or reverse Chief Judge Brown's decision to exercise supplemental jurisdiction in the Deluxe Action.

The upshot of the foregoing is that the Whitlock Action must be dismissed for lack of subject matter jurisdiction, but the Deluxe Action will continue. *See generally Cella,* 173 F.3d at 912-13 (analyzing consolidated cases separately and remanding to district court with instructions to dismiss the action as to which jurisdiction was lacking and continue with the other). Any seeming inconsistency stems, as we have seen, from the rule that consolidated actions maintain their separate identities and from the asymmetric quality of the § 1367(b) plaintiff exclusion.

This decision is intended to remove a jurisdictional infirmity that might have tainted any eventual judgment in the consolidated cases. To be clear, the court continues to exercise the full extent of its diversity and supplemental jurisdiction over all remaining claims. The parallel claims asserted by Whitlock (in its Amended Fourth-Party Complaint, Docket No. 213) and the Agency (in its Fifth-Party Complaint, Docket No. 287) for breach of the Arch Bond and Takeover Agreement are still properly before this Court in the surviving Deluxe Action. In particular, this opinion should not be construed to affect the earlier summary judgment orders. (Docket Nos. 203, 205, 259; *see* pp. 5-6, *supra*) Any rulings that arguably were made under a jurisdictional cloud, or that could be viewed as relating to both the Whitlock Action and the Deluxe Action, are hereby adopted and reaffirmed as rulings in the Deluxe Action.

## CONCLUSION

For the foregoing reasons, Arch's motion, to the extent it seeks to dismiss the Deluxe Action, is **DENIED,** but to the extent it seeks to dismiss the Whitlock Action, is **GRANTED**. An appropriate order will be filed with this opinion.

_____
KEVIN MCNULTY, U.S.D.J.

Dated: April 19, 2013