UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DELUXE BUILDING SYSTEMS, INC.,** **Plaintiff,** v. **CONSTRUCTAMAX, INC., et al.,** **Defendants.** | Civ. No. 2:06-cv-02996 (KM)(MAH) **MEMORANDUM OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This motion comes before the Court upon the motion of Arch Insurance Company and Arch Reinsurance Company (collectively "Arch") for partial summary judgment against Whitlock Mills, LLP ("Whitlock") and the New Jersey Housing and Mortgage Finance Agency ("the Agency"). Judge Brown has already ruled, *inter alia,* "that Arch materially breached the Takeover Agreement as a matter of law because it failed to complete Work on the Project within several years of the contractually mandated completion date" and did not obtain an extension of the deadline. [Docket No. 259]. Arch's motion seeks two rulings: (1) that Arch's exposure to damages is limited to the unexpended portion of the penal sum of the Arch Bond, which it calculates to be $15,199,567.55; and (2) that Whitlock and the Agency are precluded from recovering any liquidated damages for delay.

For reasons explained more fully below, Arch's motion is denied in its entirety. In short, the Arch Bond, the Construction Contract, and the Takeover Agreement must be read together. Arch has more than one role. Originally, it was solely a surety for Cmax, liable on its bond for Cmax's shortcomings. But later, Arch entered into a separate Takeover Agreement, pursuant to which it stepped into the shoes of Cmax as contractor. Arch's liability as surety would generally be limited to the amount of the Bond. But Arch's liability for its own breaches of the Takeover Agreement (and the Construction Agreement, as incorporated therein) would not. Arch's argument that Paragraph 10 of the Takeover Agreement limits its liability, to the extent it has any validity, is not the stuff of summary judgment.

Further, it is clear that the Construction Contract and Takeover Agreement obligate Cmax and Arch to pay liquidated damages if they fail to complete the project timely. The contractual breach having been established by Judge Brown as a matter of law, there is no basis to deny recovery of liquidated damages as "inequitable."

### I. BACKGROUND

A. <u>The Whitlock Mills Project</u>

The facts and procedural history of the case are well known to the parties, for whose benefit I write this unpublished opinion. In 2004, Whitlock was the owner of a 330-unit rental housing development under construction in Jersey City known as Whitlock Mills (the "Whitlock Mills Project"). Whitlock

and Constructamax, Inc. ("Cmax") entered into a construction contract (the "Construction Contract") under which Cmax would serve as the general contractor for the Whitlock Mills Project. In connection with the Construction Contract, Cmax obtained from its surety, Arch, a payment and performance bond in the penal sum of $34,581,371 (the "Arch Bond"). Whitlock financed the Whitlock Mills Project primarily through a loan from the Agency. Thus both Whitlock and the Agency had interests to protect, and both were made obligees under the Arch Bond.

Part of the Whitlock Mills Project involved pre-fabricated modular buildings known as I-Buildings. On November 3, 2004, Cmax and Deluxe Building Systems, Inc. ("Deluxe") entered into an agreement (the "Subcontract"). (The parties amended the Subcontract on January 6, 2006.) Under the Subcontract, Deluxe would manufacture the I-Buildings at its factory in Berwick, Pa. and deliver them to the Whitlock Mills Project site. Then, under the Construction Contract, Cmax was obligated to perform all site work, including the laying of concrete foundations, relating to the I-Buildings.

The Whitlock Mills Project did not progress as hoped. In April and May of 2006, Cmax failed to pay $928,720.66 that it allegedly owed Deluxe under the Subcontract. On June 16, 2006, Cmax abandoned work on the Whitlock Mills Project. In response, Whitlock, as obligee under the Arch Bond, made a demand on Arch as obligor. Negotiations ensued and, on February 13, 2007, Arch and Whitlock entered into a Takeover Agreement. That Takeover

Agreement required Arch to complete the work under the Construction Contract on or before October 13, 2007. It is undisputed that the work was not completed within that nine-month deadline. Indeed, some 34 months after the date of the Takeover Agreement, Arch still had not completed the work. On December 11, 2009, Arch announced that it was terminating the Takeover Agreement and informed Whitlock that it intended to cease work on December 20, 2009.

B. <u>The Current Litigation</u>

The procedural history of this case has been discussed at length in prior written opinions by this Court and will not be repeated here.[1] To frame the rest of the discussion, however, I note a few items. On January 13, 2009, Chief Judge Brown entered a bifurcation order. It provided that liability issues be decided first, with a damages phase to follow. On May 6, 2010, Chief Judge Brown issued two separate summary judgment opinions. In the first, Judge Brown concluded that "Cmax breached the [Subcontract] and is liable to Deluxe for damages." (Docket No. 203, at 5.) In the second, Judge Brown concluded "that Cmax materially breached the [Construction] Contract and is liable to Whitlock for the damages resulting therefrom." (Docket No. 205, at 9.)

Cmax having been found liable to Whitlock, the obligations of Arch came to the foreground. Arch, as Cmax's surety and obligor, was potentially liable to Whitlock as obligee under the Arch Bond. There was more, however. In an

---

[1] For a detailed discussion of the procedural history of this case and a summary of relevant rulings see the Memorandum Opinion filed April 19, 2013 [Docket No. 474].

4

attempt to save the Project, Arch had entered into the Takeover Agreement with Whitlock. In essence, Arch became the contractor, and it took on the obligation to complete the work under the Construction Contract on or before October 13, 2007.

Those obligations set the scene for dueling claims by Whitlock and Arch under the Arch Bond and the Arch/Whitlock Takeover Agreement. On February 8, 2011, Judge Brown addressed those dueling claims. (Docket No. 259.) He granted summary judgment in Whitlock's favor, finding (a) that Arch was liable on the Arch Bond and (b) that Arch had breached the Takeover Agreement. (*Id.* at 7-8.) Judge Brown rejected as a matter of law Arch's defense that Whitlock was not entitled to reimbursement for certain items on which Whitlock had allegedly overpaid. (*Id.* at 8-9.)

Liability having been established, Whitlock moved for partial summary judgment on damages. Its motion sought, *inter alia,* a ruling 1) that Arch and Cmax are responsible for completion costs; 2) that Arch and Cmax are liable to Whitlock for liquidated damages; and 3) that Arch is liable beyond the penal sum of its bond for all damages flowing from its own material breaches of contract. (Docket No. 294.) Judge Salas (to whom the case had been reassigned upon Judge Brown's retirement) denied Whitlock's summary judgment motion in an oral opinion. (Docket No. 380.) Most pertinent here is her ruling that "a genuine issue of material fact exists as to whether Arch's liability can exceed the limit of the penal sum of the bond." (Docket No. 383, at 8.)

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth

6

types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

### B. Whether Arch's Liability is Limited to the Penal Sum of the Arch Bond

*1. Does Arch have exposure to damages that is independent of its role as surety under the Arch Bond?*

Arch moves for summary judgment that its liability in damages cannot exceed the unexhausted amount of the Arch Bond. In general, a surety is liable *qua* surety only up to the amount of its bond. *See Monmouth Lumber Co. v. Indem. Ins. Co. of Am.*, 21 N.J. 439 (1956). That general principle is undisputed here. It is also undisputed, however, that upon Cmax's default, Arch took over the project. It entered into a Takeover Agreement, pursuant to which it essentially stepped into Cmax's shoes and assumed the duties of contractor

under the Construction Agreement. As a result, Arch was not merely potentially liable as surety on its bond. It was also liable for breach of the contractual duties it undertook pursuant to the Takeover Agreement. Arch was liable for damages, not just as a surety, but as an ordinary contracting party.

The default rule is that a surety loses the protection of the bond's penal limit when it takes over a project. *See Int'l Fidelity Ins. v. County of Rockland*, 98 F. Supp. 2d 400, 429 (S.D.N.Y. 2000); *McWaters and Bartlett v. United States*, 272 F.2d 291, 295 (10th Cir. 1959) (because the surety on the performance bond agreed to complete the contract, "[t]hat would, of course, subject [the surety] to full liability for all amounts incurred in furnishing labor and material in the completion of the job, irrespective of the $69,000 liability limitation in its bond . . . . [B]y such action [the surety] waived the penalty limitation of its bond"); *Continental Realty Corp. v. Andrew J. Crevolin Co.*, 380 F. Supp. 246, 252 (S.D.W.Va. 1974) (surety may "take over and assume completion of the contract and thereby become entitled to payments, if any, of the balance of the contract price, in which event it could not reasonably be argued that the limit of its responsibility was up to . . . the penal sum of the bond, for the completion of the contract might well have exceeded that sum"). That default rule creates a distinction between cases in which the surety takes over completion of the contract by stepping into the shoes of the contractor and, on the other hand, cases in which the surety chooses simply to pay off its obligation to the obligee (or deny liability). There is a good reason for this

distinction. The United States District Court for the Southern District of New York has explained:

> Although the loss of the protection provided to the surety by the penal bond limit is a substantial disadvantage to the surety, a compensating advantage is provided by the fact that the surety, in taking over the project, is in control of completion costs. . . . Also of concern is the issue of fairness to the bond's obligee. By taking control of construction expenditures away from the obligee, a surety that takes over the construction contract could increase the risk to the obligee, if the penal bond limit on the surety's potential loss were not removed. This is true because, if the surety's total exposure was limited to the penal sum of the bond—regardless of the actual construction cost or amount of delay—there would be no incentive for the surety to keep costs low, or even to complete on time. It makes better sense to keep the burden of liability on the best cost-avoider—that is, on the surety, who has control of the work, of the expenditures, and of the pace of construction.

*Rockland*, 98 F. Supp. at 429.

Arch did not stand on its bond, but agreed to step into the shoes of Cmax as contractor. All other things being equal, then, the amount of the bond does not limit the damages that may be assessed against Arch for breach of contract as a result of Arch's having entered into the Takeover Agreement.

### 2. Does Section 10 of the Takeover Agreement nevertheless limit breach-of-contract damages to the amount of the bond?

That is not the end of the matter, however. A surety that takes over a project is still free to negotiate contractual mechanisms to protect itself. Arch argues that this is exactly what it did in Paragraph 10 of the Takeover Agreement. According to Arch, it is entitled to summary judgment because Paragraph 10 of the Takeover Agreement unambiguously limits Arch's potential exposure to the amount of the penal sum of the bond.

Here is Paragraph 10 of the Takeover Agreement:

> 10. <u>Preservation of Penal Sum Limitation on Surety's Liability</u>. All payments by Surety (a) toward completion of the Work and (b) for labor performed or materials, provisions, provender, or other supplies or teams, fuels, oils, implements, or machinery furnished in connection with the Contract in excess of the amount of payments actually made by Owner to Surety pursuant to this Takeover Agreement shall be deemed payments under the Bond, and the penal sum of the Bond, which constitutes the limit of Surety's liability thereunder, shall be deemed to have been reduced by the amount of any such payments made by Surety; provided, however, that Surety's legal expenses and any costs Surety has incurred for work performed by CSF through the date of this Takeover Agreement shall not be deemed payments under the Bond, and thus the penal sum shall not be deemed to have been reduced by the amount of these expenses. Nothing contained in this Takeover Agreement is intended, or shall be construed, to waive, or to increase the liability of Surety beyond, the limit of Surety's liability under the Bond or any other defenses to liability set forth in the Bond. Owner shall not make any claim against Surety, or demand damages or performance from Surety, after Surety has expended or obligated itself to expend the remaining penal sum of the Bond.

(Docket No. 359-11, at 34.)

I cannot say that, as a matter of law, Paragraph 10 must be read as Arch reads it. Paragraph 10 provides, for example, that unreimbursed sums paid by Arch to complete the project shall reduce the amount of the Bond. And it cuts off the owner's claims against the Surety once the bond has been exhausted. But this paragraph may be plausibly read as pertaining to Arch's liability "under the Bond," *i.e.*, its liability *as surety*, and to claims against Arch *as surety*. Paragraph 10 does not seem to contemplate limiting Arch's liability for

*its own breaches* of the contractual performance obligations it separately undertook in the Takeover Agreement.

Whitlock also presses the point that Paragraph 10 cannot be read in isolation. Paragraph 8 of the Takeover Agreement, for example, provides that if Arch does not complete the project by October 13, 2007, it will be required to pay liquidated damages of $7,775 per day. Those liquidated damages payments, says Whitlock, would not be deemed "payments under the Bond," because they are not payments toward completion of the work. The provision for these delay damages, then, is inconsistent with the notion that damages for breach of the Takeover Agreement are limited by the bond.

Finally, the Takeover Agreement incorporates and must be read in conjunction with the Construction Contract. Paragraph 13 of the Takeover Agreement expressly provides that Whitlock has the same rights against Arch that it had against Cmax under the Construction Contract, unless the Takeover Agreement provides otherwise. The Takeover Agreement, however, has no provisions for remedies in the event of breach, apart from liquidated damages for delay. The Construction Contract's remedy provision therefore controls. And Article 24 of the Construction Contract provides that, following a material breach, the defaulting Contractor "shall be liable to [Whitlock] and Agency for any loss . . . damages, or detriment to [Whitlock] and Agency," without limitation.

Reading these provisions as a whole, I agree with Whitlock's interpretation. At any rate, I cannot say as a matter of law that Paragraph 10 limits Arch's liability for breach of the Takeover Agreement to the penal sum of the Arch Bond. Summary judgment will therefore be denied.

*3. Other issues*

I briefly discuss two issues that are of subsidiary importance in light of my resolution of the issues in sections B.1 and 2, above.

a. Law of the case

In this summary judgment motion, Arch contends that its liability *cannot* exceed the unexhausted amount of the Arch Bond. As noted above, Judge Salas earlier heard a mirror-image summary judgment motion in which Whitlock contended that Arch's exposure to damages *can* exceed the amount of the bond. Judge Salas denied that motion, concluding that, as to this issue, Whitlock had failed to sustain its burden of demonstrating that no "genuine issue of material fact exists." (Docket No. 383, at 8-9). Whitlock and the Agency argue in effect that Judge Salas's decision precludes Arch's current summary judgment motion. Although I am denying summary judgment on the merits, I will briefly discuss this procedural argument, which may have repercussions elsewhere in the case.

Whitlock and the Agency assert that the law of the case doctrine requires the Court to deny Arch's motion. The law of the case doctrine holds that,

absent certain extenuating circumstances, a court will adhere to prior decisions in the case that resolved the same issue expressly or by implication. *See, e.g., Arizona v. California,* 460 U.S. 605, 618 (1983); *United Artists Theatre Circuit, Inc. v. Township of Warrington,* 316 F.3d 392, 398-99 (3d Cir. 2003).

But Judge Salas's decision did not resolve the issue presented here. Judge Salas denied Whitlock's motion for summary judgment on a particular issue; she was not called upon to decide whether Arch could establish the converse. As a matter of federal procedure, the denial of summary judgment to Party A does not imply that an "issue of fact" bars an award of summary judgment to opposing Party B.

Thus, for example, when opposing parties file dueling cross-motions for summary judgment, the governing standard "does not change." *Clevenger v. First Option Health Plan of N.J.,* 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.,* 19 F. Supp. 2d 254 (D.N.J.1998)). The court must consider the motions independently, in accordance with the familiar standards governing summary judgment. *Goldwell of N.J., Inc. v. KPSS, Inc.,* 622 F. Supp. 2d 168, 184 (2009); *Williams v. Philadelphia Hous. Auth.,* 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd,* 27 F.3d 560 (3d Cir.1994). *See also Pichler v. UNITE,* 542 F.3d 380, 386 (3d Cir. 2008).

There is an inherent ambiguity in a court's denial of summary judgment based on the existence of an "issue of fact." What the judge really means is that there is *at least* an issue of fact requiring trial. Of course, Party A's summary

judgment motion must be denied if neither Party A nor opposing Party B would be entitled to judgment as a matter of law. But *a fortiori,* Party A's motion must be denied if Party B would be entitled to prevail. So the denial of Party A's unilateral summary judgment motion, strictly speaking, leaves open the question of whether Party B might be entitled to judgment. Before Judge Salas, Whitlock failed to establish that the evidence is so one-sided as to dictate that Arch's liability *can* exceed the bond amount. That does not preclude a different movant, Arch, from showing that the evidence one-sidedly dictates that liability *cannot* exceed the bond amount. In short, Judge Salas's ruling does not preclude or predetermine the outcome of Arch's current summary judgment motion. But, as I say, I do deny it on the merits.

    b. Credit for payments

I have held that the damages are not as a matter of law limited to the penal sum of the bond. But even if they were, it would not necessarily follow that Arch is entitled to all the relief it requests.

Arch asks for a ruling limiting its remaining liability under the Arch Bond to $15,199,567.55. That represents the total $34.5 million penal sum of the bond, minus all of the money Arch allegedly spent for work performed at the project. According to Arch, Paragraph 10 of the Takeover Agreement means that it is irrelevant whether that work turned out to be defective.

The relevant portion of Paragraph 10 provides:

> All payments by Surety (a) toward completion of the Work **and** (b) for labor performed or materials, provisions, provender, or other supplies or teams, fuels, oils, implements, or machinery furnished in connection with the Contract in excess of the amount of payments actually made by Owner to Surety pursuant to this Takeover Agreement shall be deemed payments under the Bond, and the penal sum of the Bond, which constitutes the limit of Surety's liability thereunder, shall be deemed to have been reduced by the amount of any such payments made by Surety . . . .

Takeover Agreement, Paragraph 10 (emphasis added).

Arch essentially reads "and" to mean "or." (*See* Arch Supplemental Brief, Docket No. 485, at 29.) Elsewhere in the brief, however, Arch acknowledges that "the question raised is whether the 'payments' made by Arch were 'toward completion of the Work.'"

Paragraph 10 requires that any such payments have been "toward completion of the Work." A payment should not be credited toward the penal sum of the Bond unless it actually advanced the project toward completion. Thus, for example, deficiently performed work that does not advance the project "toward completion" would not support credit against the Bond. At any rate, the plain language of paragraph 10 would not permit me to enter summary judgment to the contrary. This issue, however, need not be decided on summary judgment in light of my other rulings in this opinion.

### C. Whether Whitlock and the Agency are Precluded from Recovering Liquidated Damages

The second major strand of Arch's motion for summary judgment is that it would be "inequitable" to assess liquidated damages against it and Cmax.

15

This would be inequitable, Arch says, because (1) the architect, JSA, and Whitlock failed to fulfill their professional responsibilities in supervising the Project, and were therefore to blame for ensuing complications and delays; and (2) the plans and specifications provided or approved by JSA were so deficient that no contractor relying on them could have built a code-compliant project at all, let alone done so timely.

This issue is inappropriate for summary judgment. First, Arch's argument regarding Whitlock's failure to supervise was already rejected, in its essentials, by Judge Brown. (*See* Docket No. 477, May 3, 2013 Opinion and Order ("Judge Brown has already decided the issues relating to . . . Whitlock's alleged failure to properly supervise or oversee the work by Cmax. Judge Brown's Order forecloses any issue . . . that Whitlock failed to properly supervise the project.)) Here, it is simply repackaged as an argument that it would be "inequitable" to impose damages.

Second, and more fundamentally, under the Construction Contract and Takeover Agreement, Cmax and Arch agreed to pay liquidated damages if they failed to complete the project by a certain date. Judge Brown has already ruled "that Arch materially breached the Takeover Agreement as a matter of law by failing to complete Work on the Project within several years of the contractually mandated completion date" without obtaining an extension. (Docket No. 259).[2]

---

[2] As noted above, Judge Salas previously ruled that a genuine issue of material fact precluded ruling as a matter of law that Arch and Cmax are liable to Whitlock for liquidated damages under the Construction Contract and Takeover Agreement. Judge

Once again, the current motion is little more than a cosmetically altered version of that rejected argument.

Judge Brown found that Arch breached the Takeover Agreement by failing to complete the project on time. Arch nevertheless seeks to void the contractually-agreed liquidated damages for such a breach. In Arch's view, "Whitlock and its architect denied the contractor a fair opportunity to meet the contract deadlines." (Arch Brief in Support, Docket No. 359-1, at 25.) That is tantamount to the now-foreclosed argument that Arch did not breach the contract at all. Liquidated damages may or may not ultimately be awarded. I cannot, however, particularly on summary judgment, hold that it would be "inequitable" to award contractually-agreed damages for a breach that has already been found by the Court.

## CONCLUSION

For the foregoing reasons, Arch's motion is **DENIED**. An appropriate order will be filed with this opinion.

_____
KEVIN MCNULTY, U.S.D.J.

Dated: September 5, 2013

---

Salas declined to award Whitlock summary judgment "because each party may have contributed to the delay period and neither party can establish the extent to which the other is culpable or itself not culpable." (Docket No. 383, at 8 (internal quotation omitted)).