UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DELUXE BUILDING SYSTEMS, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**CONSTRUCTAMAX, INC., et al.,**<br><br>Defendants. | Civ. No. 2:06-cv-02996 (KM)(MAH)<br><br>**MEMORANDUM OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

This motion comes before the Court upon the motion of Travelers Casualty and Surety Company of America ("Travelers") for summary judgment against Constructamax ("Cmax"). (Docket No. 463) The current dispute involves the interpretation of a performance bond issued by Travelers in connection with a construction project. DeLuxe Building Systems, Inc. ("DeLuxe") entered into a commercial construction contract (the "Subcontract") with Cmax to manufacture prefabricated modular buildings for the Whitlock Mills project. DeLuxe, through its surety, Travelers, gave a performance bond (the "Travelers Bond") to Cmax in connection with the Subcontract. Through the Travelers Bond, Cmax was protected against losses resulting from DeLuxe's failure to meet obligations under the Subcontract.

For reasons explained more fully below, Travelers is entitled to summary judgment against Cmax. Because Cmax defaulted on the Subcontract, it does not have a right to performance under the Travelers Bond.

## I. BACKGROUND: The Travelers Performance Bond

On November 3, 2004, DeLuxe entered into the Subcontract with Cmax, which was amended on January 26, 2006. (*See* Memorandum Opinion dated May 5, 2010, Docket No. 203, at 2.) The Subcontract governed the manufacture, delivery, and installation of twenty-nine I-Buildings at the Whitlock Mills project. Under the Subcontract, DeLuxe was to provide monthly invoices (actually, requisitions for progress payments) to Cmax for work performed, and Cmax was to pay them. (*See id.* at 2-3.)

On November 5, 2004, DeLuxe, through its surety, Travelers, issued the Travelers Bond. (A copy of the Bond is attached to the Affidavit of Frank Caufield in Support of Motion for Summary Judgment ("Caufield Affidavit"), Docket No. 463-2.) Paragraph 3 of the Travelers Bond provides that "[i]f there is no Owner[1] Default, [Travelers'] obligation under this Bond shall arise . . ." (*Id.*) Paragraph 12.4 defines Owner Default as "Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof." (*Id.*)

---

[1] The "Owner" is defined as Cmax, the "Contractor" as DeLuxe, and the "Surety" as Travelers.

2

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party

must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

B. <u>"Owner Default"</u>

Under the explicit terms of the Travelers Bond, Travelers' obligations arise only "[i]f there is no Owner Default." That is a common provision in surety bonds. *See, e.g., Gen'l Ins. Co. of America v. K. Cappolino Constr. Corp.*, 903 F. Supp. 623, 627 (S.D.N.Y. 1995); *Roel Partnership v. Amwest Sur. Ins. Co.*, 258 A.D. 2d 780, 781-82 (N.Y. App. Div. 1999). Travelers contends that, since

Cmax defaulted on the Subcontract, Travelers' obligations under the Bond never arose.

Travelers does not attempt independently to prove that Cmax breached the Subcontract, but relies on Judge Brown's 2010 award of summary judgment to DeLuxe. In 2006, a dispute arose between DeLuxe and Cmax, and Cmax failed to pay certain of DeLuxe's invoices under the Subcontract. (*See* Order Granting Partial Summary Judgment dated May 5, 2010, Docket No. 204.) On summary judgment, Judge Brown ruled that Cmax had breached the Subcontract and that DeLuxe had been entitled to terminate its performance as of June 16, 2006. (*Id.*) Cmax cannot gainsay Judge Brown's summary judgment ruling, but nevertheless asserts that (1) Cmax's default was "remedied"; and (2) Travelers waived the issue of failure of a condition precedent by failing to plead it as a defense in its answer to Cmax's third-party complaint.

1) <u>Whether Cmax's breach was "remedied"</u>

This Court has already ruled, as between Cmax and DeLuxe, that Cmax breached the Subcontract. Cmax contends, however, that its default was "remedied" and that therefore Travelers continues to be liable under the Travelers Bond. Specifically, Cmax points to alleged credits and offsets that should allegedly be credited against the DeLuxe invoices. As I see it, Cmax is impermissibly attempting to relitigate the underlying liability issues in the context of the Bond.

5

An amendment to the Subcontract grants Cmax the option to claim a certain credit of $250,000. Cmax says it exercised its rights and claimed this credit on June 15, 2006. But Cmax made precisely this argument in 2010, in its unsuccessful opposition to DeLuxe's motion for partial summary judgment:

> Cmax has other claims and offsets against DeLuxe, including those relating to the cost of repairs to DeLuxe's work, liquidated damages and the application of the $250,000 credit provided for in the Amendment. In view of the nature and complexity of issues presented, there is simply no means by which this Court could resolve them without conducting a trial.

(Cmax Mem. in Opp., March 15, 2010, Docket No. 178, at 8-9.) Judge Brown held that the $250,000 credit, and various other offsets claimed by Cmax, did not negate Cmax's failure to pay DeLuxe's invoices as required by the Subcontract. Judge Brown held:

> Cmax has materially breached the Contract, and DeLuxe was within its rights to cease all work on the Project. Cmax's arguments in opposition [to DeLuxe's motion for partial summary judgment] are simply unavailing and cannot overcome a basic application of the facts of this case to the plain language of the Contract.

(Memorandum Opinion dated May 5, 2010, Docket No. 203, at 7.)

In addition to the alleged $250,000 credit, Cmax points to later payments totaling $680,381 from Arch to DeLuxe, and argues that these should be credited to Cmax as payments towards Requisitions 8, 9, and 10. True, once Arch took over the project in 2007, Arch agreed to pay DeLuxe's then-outstanding Requisitions. In opposing *Arch's* separate motion for partial summary judgment, DeLuxe did not dispute that most of the $680,000 that

Arch paid in July 2007 should be credited against Requisitions 8, 9, and 10.[2] Arch made those payments to revive the Project -- specifically, to induce DeLuxe, which had ceased work when Cmax defaulted, to deliver and set up I-building units.

Cmax argues that if the $680,381 paid by Arch and Cmax's $250,000 credit are added together and applied to the balance due on Requisitions 8, 9, and 10, they will "remedy" or "cure" the Owner Default. Assuming the truth of the underlying factual allegations, this argument nevertheless misses the mark.

Judge Brown found the default in 2010, long after these alleged credits and offsets took place. His May 5, 2010 summary judgment ruling expressly held that Cmax materially breached the Subcontract and that DeLuxe therefore properly terminated its performance under the Subcontract in June 2006. The July 2007 payments by Arch, a surety that took over the Project *as a result* of Cmax's default, do not negate or erase the fact of default. Indeed, they tend to confirm it. Arch's payments to DeLuxe do not constitute payment by Cmax "as required by" the Subcontract. By Cmax's logic, its default would never ripen

---

2   See Affidavit of Dan Meske, Docket No. 311-1, at ¶ 13 ("As part of this Motion, Arch claims that it is entitled to a credit in the amount of $680,381 against Requisitions 8, 9, and 10. The credit should only be $630,000.")).The reason for the discrepancy between the $680,000 and 630,000 figure was DeLuxe's claim that $50,000 of the total went toward parts and equipment independent of Requisitions 8, 9, and 10.

because presumably it (or someone else) could always "remedy" the default.[3] That position is inconsistent with Judge Brown's holding that DeLuxe was entitled to terminate. When DeLuxe declared Cmax to be in default and sued on May 17, 2006, Cmax was in default under the Subcontract; when DeLuxe terminated performance on June 16, 2006, Cmax was in default. That Arch in 2007 took over and took steps to resume the Project does not affect the status of Travelers' obligations to Cmax.

It is black-letter law that "a surety is chargeable only according to the strict terms of its undertaking and its obligations cannot and should not be extended either by implication or by construction beyond the confines of its contract." *Monmouth Lumber Co. v. Indemnity Ins. Co. of N.A.*, 21 N.J. 439, 452 (1956); *see also State v. Tuthill*, 389 N.J. Super. 144, 148 (App. Div. 2006). As to Cmax's default, the strict construction of this Bond should not yield a more lenient result than Judge Brown's award of summary judgment under the ordinary principles of contractual interpretation. Cmax's contractual breach necessarily implies that Travelers' obligations as surety do not arise.

At best, Cmax might claim that payments or credits are offsets against damages. Such a contention, however, is not central to this motion. What is clear is that Cmax defaulted, and that its default relieved Travelers of its obligation under the terms of the performance bond.

---

[3]   I note that the Subcontract gave Cmax 10 days to cure defects before Deluxe exercised the right to terminate. (Docket No. 173-3 at Docket p. 19, at ¶ 6.2. (Ex. B to Subcontract, "General Conditions")).

8

### 2) Whether Travelers waived the issue of "Owner Default"

Cmax, citing Fed. R. Civ. P. 9(c), contends that Travelers failed to allege in its Answer the failure of a "condition precedent" to its obligation to pay on the Bond – that condition precedent being Cmax's non-default under the Subcontract. In its Answer to Cmax's Third Party Complaint (Docket No. 18), dated January 29, 2007, Travelers generally denies that it is liable under the Travelers Bond. For example, Travelers' Second Affirmative Defense states that "[t]he damages sought by Constructamax, Inc. are precluded by the terms of the applicable bonds and law." Constructamax correctly points out that Travelers' Answer does not allege in so many words that Owner Default constituted the failure of a condition precedent. As Cmax sees it, Owner *non-*Default was a condition precedent to Travelers' obligations under the Bond, and Travelers was required to allege that specifically in its Answer to Cmax's Third-Party Complaint. The issue of Owner Default, in Cmax's view, has therefore been waived.

Initially, I observe that the issue may not be consequential. Even if Owner non-Default were a condition precedent (and, as discussed below, I do not believe it is), I would be inclined to grant Travelers leave to amend its Answer. *See* Wright and Miller, Federal Practice and Procedure: Civil 3d § 1303, at 329 (failure to plead condition precedent "normally should be curable by amendment under Rule 15"). Under the Federal Rules, substantive issues should rarely turn on the technicalities of pleading. A court therefore "should

freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2).; *see generally Bjorgung v. Whitetail Resort, LP,* 550 F.3d 263, 266 (3d Cir. 2008). Accordingly, absent a showing of substantial surprise or prejudice to Cmax, I would grant Travelers leave to amend its Answer if necessary.

There is no such showing of prejudice. Travelers answered the Third-Party Complaint in 2007. Almost immediately, in August 2007, Travelers placed Cmax on notice that it would be denying liability based on Cmax's default on its contractual obligations to DeLuxe. (*See* Affidavit of Frank Caufield in Further Support of Motion for Summary Judgment ("Caufield Supp. Affidavit"), Docket No. 473-1, Exhibit A (August 23, 2007 Letter from Travelers' counsel to Cmax's counsel stating that "[s]ince Cmax has defaulted under the contract . . . no obligations arise under the bond with respect to Travelers.")) Cmax nevertheless complains that that it has litigated against Travelers for years without notice of this condition precedent issue. But the default is not really an issue between Cmax and Travelers at all. Rather, it was an issue between the parties to the Subcontract, Cmax and DeLuxe, and Cmax vigorously litigated that issue against DeLuxe. Cmax's default was not definitively established until 2010, when this Court granted summary judgment based on Cmax's breach of the Subcontract. Travelers' current motion contains no significant new material, but is a direct consequence of Judge Brown's 2010 summary judgment ruling. Thus I would not deny a motion to amend based on Cmax's assertion that it has sustained prejudice from "gross delay."

10

More to the point, however, I am not convinced that Owner non-Default under the Bond is a "condition precedent," whose failure must be pleaded with particularity by the Surety.

The Rule 9(c) requirement that conditions precedent be pleaded was designed, not to add to pleading burdens, but "to eliminate the detailed and largely unnecessary averments that resulted under the common law procedure." Wright and Miller, *supra,* § 1302 at 324. The first sentence of this two-sentence Rule provides that "[i]n pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c). Thus the Rule only "obliges the pleader to allege compliance with the contract or the performance of any relevant conditions or to state that the performance or occurrence of the conditions precedent was waived or excused." *Id.* § 1303 at 326. The first sentence of Rule 9(c) is essentially a plaintiff's rule; it is directed to the party that is seeking the other's performance. Such a party must plead, at least generally, that conditions precedent were "performed." It is the second sentence of Rule 9(c) that seemingly touches on a defendant's obligations. That second sentence provides that "when denying that a condition precedent has occurred or been performed, a party must do so with particularity."

Interestingly, the plain language of the Rule suggests to me that it is Cmax, not Travelers, that is primarily at fault here. Cmax sued Travelers for payment under the Bond; *i.e.,* CMax is the party seeking performance. But

Cmax's Third Party Complaint (Document No. 11) does not allege Cmax's non-default under the Subcontract as a condition precedent. If Cmax is correct that non-default is a condition precedent, then it should have been pleaded in the complaint.[4] If this condition precedent had been pleaded, then Travelers would have been called upon to admit or deny it, and, if it denied, to do so "with particularity." Fed. R. Civ. P. 9(c). But Cmax never alleged in the first place that this condition precedent – *arguendo,* an essential element of its claim under the Bond -- had been fulfilled.

Finally, and most broadly, I do not find that "non-default" easily fits the definition of a condition precedent. A condition precedent is some "fact or event occurring subsequently to the making of a valid contract which must exist or occur before there is a right to immediate performance." *Suburban Transfer Service, Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 225 (3d Cir. 1983). But Cmax's default was not an "event which must occur"; it was an event which must *not* occur. The absence of any default was a status quo that had to remain in place if Cmax's right to performance from Travelers were to remain in effect.

There is a judicial policy of leniency in characterizing conditions precedent:

---

[4] "Despite its liberality, Rule 9(c) still obliges the pleader to allege compliance with the contract or the performance of any relevant conditions or to state that the performance or occurrence of the conditions precedent was waived or excused." Wright and Miller, *supra,* §1303, at 326.

> Rule 9(c) only requires a denial of those matters that must be performed or have occurred as a prerequisite to suit. Thus, when matters of affirmative defense, such as the occurrence or performance of conditions subsequent, are mistakenly designated as denial of the occurrence or performance of conditions precedent, the district court should treat them as if they had been properly pleaded. This judicial leniency seems appropriate since it often is difficult to distinguish between conditions precedent and subsequent, especially in complex or lengthy contracts....

Wright and Miller, *supra,* § 1304, at 333-34. It seems strained, even somewhat paradoxical, to interpret absence-of-default as an "event" that "occurred," as opposed to a state of affairs that was interrupted by the "event" of Cmax's default. The better view is that Cmax possessed certain rights under the Travelers Bond that were destroyed by a subsequent event – Cmax's default under the Subcontract. For this reason, too, Travelers has not waived the issue of Owner Default by failing to plead non-default as a condition precedent.

## CONCLUSION

For the foregoing reasons, Travelers' motion for summary judgment is **GRANTED**. An appropriate order will be filed with this opinion.

_____
**KEVIN MCNULTY, U.S.D.J.**

Dated: September 5, 2013